VIRGINIA S. SWAYZE *v.* WILLIAM S. SWAYZE

COTTER, C. J., BOGDANSKI, LONGO, SPEZIALE and PETERS, Js.

Argued October 11—decision released December 19, 1978

*Lawrence E. Larson,* for the appellant (plaintiff).

*David F. Babson, Jr.,* with whom, on the brief, was *Peter Bentley,* for the appellee (defendant).

Longo, J. This is an appeal by the plaintiff, Virginia S. Swayze, from a judgment of the Superior Court on the plaintiff's motion for contempt and the defendant husband's motion for modification of alimony and support. The trial referee, exercising the powers of the Superior Court, found that the defendant, William S. Swayze, owed the plaintiff $4877.50 in unpaid alimony, that the defendant did not have gross income in excess of $45,000 for each of the years 1975 and 1976, and that alimony due to the plaintiff should be reduced to $10,000 per year.

The plaintiff's assignment of errors[1] raises three issues for our consideration: (1) whether the trial court erred in its computation of basic alimony arrears; (2) whether the court erred in its computation of the cost-of-living increase owed the plaintiff for the years 1973 and 1974 and in concluding that no cost-of-living increase was due to the plaintiff for the years 1975 and 1976; and (3) whether the court erred in modifying the original judgment of divorce as to the amount of alimony due to the plaintiff.

The finding of the trial court discloses the following: By judgment rendered March 5, 1965, the plaintiff was granted a divorce from the defendant, custody of the two minor children of the marriage, and alimony and child support in the amount of $18,000 per year. The judgment of divorce incorporated a detailed separation agreement which provided for a reduction in the defendant's support obligation of $2000 per year as each child reached the age of twenty-one years, or completed formal education, or became emancipated under such cir-

---

[1] Most of the plaintiff's assignments of error with respect to the finding are dispositive in nature and will be addressed in the body of this opinion. The plaintiff's claim, however, that the court erred in refusing to find certain facts may, with one exception, be dismissed at this point. Some of the facts claimed are not admitted or undisputed, and should not be added to the finding. *Salvatore* v. *Milicki*, 163 Conn. 275, 277, 303 A.2d 734. In the remaining instances, the facts sought to be added are explicit or implicit in the finding as made; *Walsh* v. *Turlick*, 164 Conn. 75, 77, 316 A.2d 759; and thus no useful purpose would be served by adding those facts to the finding. *Aetna Casualty & Surety Co.* v. *Murray*, 145 Conn. 427, 429, 143 A.2d 646. We find that only one paragraph of the draft finding, relating to the "cap" clause in the separation agreement, is "admitted or undisputed." We have determined, however, that the application of that clause is immaterial to the disposition of this appeal. Thus, its addition to the finding is not warranted. *Barnini* v. *Sun Oil Co.*, 161 Conn. 59, 61, 283 A.2d 217; *Charter Oak Estates, Inc.* v. *Kearney*, 160 Conn. 522, 525, 280 A.2d 885.

cumstances that it was not reasonable to expect the plaintiff to contribute to the child's support. In the event of the plaintiff's remarriage, the judgment and agreement provided that the defendant's obligation was limited to the payment to the plaintiff of $3000 per year for the support of each child.

The parties operated under the separation agreement until June, 1969, when the defendant assumed the care and custody of the minor daughter, Virginia, which custody continued until her emancipation in May, 1973. Between 1969 and 1973, the defendant spent over $36,000 for the care, support and education of Virginia, in addition to the basic amounts paid to the plaintiff. Similarly, in June, 1976, the defendant assumed the care and custody of the minor son, James, and custody was thereafter awarded by the court to the defendant. Between mid-1976 and the date of the son's emancipation in February, 1977, the defendant expended over $8500 for the support and education of James.

At some point after taking custody of Virginia, the defendant reduced his alimony and support payments to the plaintiff by $3000 per year, claiming a setoff for amounts expended on Virginia. In 1976, the defendant reduced alimony and support payments by another $3000, claiming a similar setoff for the support of James. The plaintiff filed her motion for contempt on February 20, 1976, claiming essentially that the defendant had failed in his obligations under the separation agreement and specifically that the defendant had no right to reduce alimony payments upon taking custody of Virginia and James. On March 24, 1976, the defendant filed his motion for modification of alimony, support and custody of the son, James. In its memorandum on the two motions and its subsequent finding, the court

found that the defendant had retired from his job as comptroller of Mobil Oil Corporation and was receiving a substantially reduced income. In addition to the facts already recounted, the court found that the defendant had encountered severe heart problems, including two heart attacks, and had undergone open heart surgery. On the basis of this evidence, the trial court found that there had been a substantial change in the circumstances of the parties warranting a modification of the award of alimony to $10,000 per year. From this and the rulings of the court hereinbefore stated, the plaintiff has appealed to this court.

## I

We turn first to the issue whether the trial court erred in its computation of basic alimony arrears.[2] The trial court found that the defendant, upon taking custody of his daughter, Virginia, improperly reduced the amount of his alimony payments by $3000 per year during the period from 1971 to 1976. The plaintiff assigns as error the court's finding that the operative date of this reduction in alimony was 1971, claiming that the true date was mid-1969, in accordance with her testimony at trial and a purported stipulation made by the parties.[3] The defend-

[2] In his brief, the defendant argues that the plaintiff has failed to pursue several assignments of error. Upon a review of the plaintiff's brief and reply brief, we are satisfied that the plaintiff has diligently pursued her assignments of error and thus find the defendant's argument without merit. *Prokolkin* v. *General Motors Corporation*, 170 Conn. 289, 304, 365 A.2d 1180; see *DiSesa* v. *Hickey*, 160 Conn. 250, 262, 278 A.2d 785.

[3] The transcript reveals that, at the trial before the state referee, counsel for the defendant did, in recounting a "stipulation" of some basic facts, state that a reduction in alimony did occur in 1969. At oral argument, however, counsel for the defendant made clear that he was stating only the contested facts, and not a "stipulation" of facts.

ant, on the other hand, testified that the operative date of this reduction was 1971. It was the trial court which had the opportunity to observe the demeanor of the parties. It was best able to judge the credibility of the witnesses. *Kukanskis* v. *Jasut,* 169 Conn. 29, 32, 362 A.2d 898. The testimony of the defendant, which was believed by the court to the exclusion of the plaintiff's testimony, was sufficient to support the finding under attack. *Branford Sewer Authority* v. *Williams,* 159 Conn. 421, 424, 270 A.2d 546; see *Dombrowski* v. *Dombrowski,* 169 Conn. 85, 86, 362 A.2d 907.

However, although we find that 1971 was the operative date of the defendant's reduction in alimony, we agree with the plaintiff that the trial court erred in computing the amount of basic alimony arrears. The trial court determined that although the original judgment of divorce was silent with regard to the amount of support, if any, to be paid in the event of a change in the custody of the children, the defendant was entitled to reduce alimony payments by $2000 upon taking custody of Virginia, and then James, pursuant to the provision of the original judgment of divorce allowing such a reduction when each child "marries or becomes emancipated under such circumstances that it is not reasonable to expect the Plaintiff to contribute to his support and maintenance." The court then concluded that, for the period 1971 to 1976, the defendant owed the plaintiff $5500 in alimony arrears. We disagree. The defendant was not entitled to a full $2000 deduction in 1976, as he took custody of James after one-half of the year had expired. Thus, upon taking custody of James in mid-1976, the defendant was entitled to reduce his support and alimony payment not by $2000 but only by $1000, leaving a bal-

ance of alimony owed in the amount of $15,000 for 1976. The defendant paid $13,500 in 1976. Thus, as the table in the footnote illustrates,[4] the total amount of alimony arrears due to the plaintiff for the period 1971-1976 was $6500 rather than $5500.

## II

We next address the plaintiff's claim that the court erred in finding that the defendant's gross income for the years 1975 and 1976 did not exceed $45,000 per year, and in concluding from that finding that no cost-of-living adjustment was owed to the plaintiff for those years. The judgment of divorce and the separation agreement contained a clause presumably designed to protect the plaintiff against a diminution, by reason of inflation, in the value of alimony and support payments which, over the years, became due to her. The clause provided: "Adjudged further, the Defendant represents that his *annual gross income* from any and all sources for the calendar year 1963 was Forty-five Thousand Dollars ($45,000) and agrees that the annual payment of Eighteen Thousand Dollars ($18,000) per year required hereinabove is forty per cent (40%) thereof. In the event the Defendant's gross annual income shall exceed the sum of Forty-five Thousand Dollars ($45,000), then and only in that event, in

---

[4]

| YEAR | ALIMONY PAID | ALIMONY OWED | DEFICIENCY |
|------|-------------|-------------|------------|
| 1971 | $15,000 | $16,000 | $1000 |
| 1972 | 15,000 | 16,000 | 1000 |
| 1973 | 15,000 | 16,000 | 1000 |
| 1974 | 15,000 | 16,000 | 1000 |
| 1975 | 15,000 | 16,000 | 1000 |
| 1976 | 13,500 | 15,000 | 1500 |

Total Deficiency in Alimony Payments     $6500

addition to the basic provision for the support of the Plaintiff and the children as set forth hereinbefore, the Defendant shall pay to the Plaintiff and/or children an additional amount necessary to reflect the increase, if any, which may occur in the cost of living over and above the base year 1964. *Such additional amount shall be the percentage by which the average of the four quarterly cost-of-living indices published by the Bureau of Labor Statistics, United States Department of Labor, for the year for which the amounts above are due, exceeds the average of the same quarterly indices published for the previous year.* Payments due the Plaintiff and/or children under this paragraph, if any, shall be made within thirty (30) days after the publication of the cost-of-living index for the last quarter of each calendar year." (Emphasis added.) This clause, referred to as a cost-of-living adjustment clause (COLA), is common in commercial contracts and is apparently employed to adjust for fluctuations in the purchasing power of the dollar relative to a predetermined base year. See *Schoenfeld* v. *Schoenfeld,* Civil No. 75-7907 (N.Y. Sup. Ct., October 14, 1975). The defendant paid a cost-of-living adjustment to the plaintiff pursuant to this provision from 1965 to 1972, based on the percentage increase each year in the United States Consumer Price Index.[5]

With respect to the years 1975 and 1976, two specific areas of disagreement exist. First, the parties cannot agree as to whether the COLA clause calls for a computation based on a cumulative increase in the consumer price index over all the years since 1964, or a computation based on the percentage

[5] There is a dispute concerning the computation of the adjustment for 1973 and 1974, which will be discussed, infra.

increase for the year when payment is due over the index for the previous year. Second, the parties are in conflict as to whether, for the purposes of the COLA clause, the value of 642 shares of Mobil Oil Corporation stock should be included in the defendant's "annual gross income" in 1975, and whether the value of the defendant's qualified Mobil savings fund should be included in his "annual gross income" in 1976.

We first note that the separation agreement and judgment are silent on the issue whether the COLA computation is to be compounded on a cumulative basis and as to the meaning of the term "annual gross income." The terms governing the method of computation are, however, as far as they go, unambiguous; they will thus be enforced according to the natural and ordinary meaning of the language used. *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 401, 365 A.2d 1086; *Trumbull Electric Mfg. Co.* v. *John Cooke Co.,* 130 Conn. 12, 16, 31 A.2d 393. The terms of the clause provide for the payment of "an additional amount necessary to reflect the increase, if any, which may occur in the cost of living over and above the base year 1964." This language, however, may not be construed to provide for a compounded computation of cumulative increases in the consumer price index. The very next sentence of the COLA clause forecloses such a reading: "Such additional amount shall be the percentage by which the average of the four quarterly cost-of-living indices . . . for the year for which the amounts . . . are due, exceeds the average of the same quarterly indices published for the previous year." Reading these two sentences together, it is clear that what was given to the plaintiff by the former was taken away by the latter. We

hold that the cost-of-living adjustment required a payment based only on the percentage increase for any one year in question over the cost-of-living index "for the previous year," and agree with the defendant that such payments were not to be based on a cumulative computation.

The plaintiff urges that the term "annual gross income," as used in the COLA clause, encompasses two events which occurred in 1975 and 1976 in connection with the defendant's retirement from employment with Mobil Oil Corporation. In 1975, certain restrictions lapsed on 642 shares of Mobil Oil Corporation stock which were paid as an incentive award to the defendant in 1970. In 1976, the defendant elected to take the proceeds of a Mobil company savings account which had been accumulating since 1953. The plaintiff argues that each of these events resulted in increased "annual gross income" within the COLA clause, thereby pushing the defendant's income over $45,000 for each of the years 1975 and 1976, and triggering the cost-of-living adjustment. The trial court rejected this argument. Whether the court erred in this respect depends upon an interpretation of the term "annual gross income" as used in the context of the divorce judgment and agreement. While there is little doubt that the parties intended that some benefit be conferred on the plaintiff in subsequent years whenever the defendant's "gross annual income" exceeded $45,000, that key term is conspicuously undefined in both the judgment of divorce and agreement. The term "annual gross income" is not entirely free of ambiguity. See annot., 79 A.L.R.2d 609. Where such ambiguity exists as to a contract term, " '[t]he oft-repeated rule is that the intent of the parties is to be ascertained by a fair and reasonable construc-

tion of the written words in the light of the circumstances surrounding the execution of the writing and in the light of the object of the parties in executing the contract.' *New Haven Sand Blast Co.* v. *Dreisbach,* 102 Conn. 169, 180, 128 A.2d 320." *White Oak Corporation* v. *State,* 170 Conn. 434, 439, 365 A.2d 1162. The words used by the parties " 'must be accorded their common meaning and usage where they can be sensibly applied to the subject matter of the contract.' *Beach* v. *Beach,* 141 Conn. 583, 589, 107 A.2d 629." *Sturtevant* v. *Sturtevant,* 146 Conn. 644, 647–48, 153 A.2d 828; see *Marcus* v. *Marcus,* 175 Conn. 138, 141–42, 394 A.2d 727.

In support of his definition of "annual gross income," the defendant relies chiefly on his joint income tax returns for the years 1975 and 1976, neither of which shows a "gross income" or "adjusted gross income" of over $45,000. The plaintiff counters that the defendant's "annual gross income" includes the shares of stock and savings plan proceeds because these assets were "available" or actually within the defendant's control in the years in question. We are persuaded, however, that, from an analysis of the terms of the agreement and judgment and the circumstances attending the defendant's payment of alimony since 1964, the defendant's interpretation of "annual gross income" should prevail.

We find support for the defendant's interpretation of "annual gross income" as used in the COLA clause in three factors. First, in article 10 of the agreement incorporated in the judgment of divorce, the parties provided that in the event that payments due the plaintiff under the COLA clause were disputed, the defendant would provide "proof of gross

income" by furnishing "acceptable evidence as to his actual gross income for the year or years in question." If that evidence was unacceptable to the plaintiff, the parties further provided that the defendant would submit "a statement signed by a Certified Public Accountant *stating the Husband's gross annual income determined by an examination of the Husband's signed Income Tax Return submitted to the United States Director of Internal Revenue for the year in question.*" (Emphasis added.) There is no indication in the judgment and agreement, nor has the plaintiff argued, that this clause was intended to be anything but conclusive on the issue of the defendant's "gross annual income." Compare *Epstein* v. *Epstein,* 201 N.Y.S.2d 594, 595. By employment of this clause, we believe that the parties intended that the defendant's "gross annual income" be determined by reference to his tax return for the year in question. Since the defendant's "gross income" in 1975 and 1976 did not exceed $45,000,[6] we agree with the trial court that the COLA clause was never triggered in those years.

Second, at the time of the divorce in 1965, the parties chose $45,000 as the income level that would trigger the COLA clause. This figure was the defendant's "gross income from any and all sources" for the year 1963. The plaintiff admits that at the time of the divorce, the defendant held the Mobil savings account valued at approximately $32,000 and stock options worth $1470. Yet, neither of those items was included in the base figure of $45,000, suggesting that, although the defendant had available assets that would make his income in excess

---

[6] The defendant's gross income in 1975 was $43,871.76; in 1976, $34,083.95.

of $45,000, those assets were not included in the parties' definition of "gross annual income." Similarly, in 1975 and 1976, the shares of stock and savings plan were assets available to the defendant, although neither was included as part of the defendant's tax return "gross income." See Internal Revenue Code, § 83 (b) (1); 1978 C.C.H. Federal Tax Reporter, vol. 1, ¶ 899X.01. From this, we conclude that the parties originally intended, in accordance with article 10 of the agreement, that a determination of "annual gross income" was to be made from a review of that figure as indicated on the defendant's tax return.

Finally, during the years 1965 to 1973, the plaintiff made a computation of amounts due under the COLA clause by reference to the basic amount of the defendant's gross income as shown on his tax return: if that figure exceeded $45,000, a COLA computation was made. For the years 1975 and 1976, however, the plaintiff now urges that the "gross income" figure on the defendant's tax return is not controlling on the issue whether a cost-of-living adjustment is due. Rather, the plaintiff argues that we should engage in a determination of income "available" to the defendant, without regard to the actual amount of gross income indicated on the defendant's tax return. We are not persuaded that the parties intended such a determination of "gross income." On the contrary, absent a specific inclusion in the defendant's "gross income" of the savings plan and shares of stock, we believe that the parties intended that a cost-of-living adjustment was due if, and only if, the "Husband's gross annual income determined by an examination of the Husband's signed Income Tax Return" exceeded $45,000 in 1975 and 1976. Since the defendant's gross

income did not exceed that amount in either of those years, we find no error in the trial court's determination that no cost-of-living adjustment was due to the plaintiff in 1975 and 1976.

### III

Before turning to the plaintiff's final assignment of error, this court must consider, sua sponte, a ruling of the lower court which was neither briefed nor argued, but which arose at oral argument. We have already determined, section II, supra, that the defendant was entitled to deduct only $2000 from the amount of alimony owed to the plaintiff upon taking custody of his daughter, Virginia. Thus, the defendant owed basic alimony to the plaintiff in the amount of $16,000 per year for the years 1971 to 1976. In determining, however, that cost-of-living adjustments for the years 1973 and 1974 in the amounts of $720 and $1657.50, respectively, were due to the plaintiff, the trial court computed the COLA using a base alimony figure of $15,000.[7] The court should have employed the figure of $16,000 as the base alimony due for 1973 and 1974. Moreover, as the table in the footnote illustrates,[8] the court determined that the consumer price index rose 7.0 points from 1972 to 1973, from 145.7 to

---

[7] At oral argument, in response to questions from the court, counsel for the defendant conceded that the trial court erred in applying a base alimony figure of $15,000 in computing the COLA for the years 1975 and 1976.

[8]

| YEAR | CONSUMER PRICE INDEX | PERCENTAGE INCREASE OVER PREVIOUS YEAR | | | AMOUNT DUE |
|------|------|------|------|------|------|
| 1973 | 154.7 | *7.0 pts. = | 4.8 % x | *15,000 = | *720.00 |
| 1974 | 171.8 | 17.1 pts. = | 11.05% x | *15,000 = | *1657.50 |
| 1975 | 187.5 | 15.7 pts. = | 9.13% x | 15,000 | |
| 1976 | 198.3 | 10.8 pts. = | 5.76% x | 15,000 | |

* The consumer price index in 1972 was 145.7. The figures accompanied by asterisks are in error.

154.7. Simple subtraction indicates that the index rose 9.0 points from 1972 to 1973. We have corrected the figures which appear erroneous in the table, and have determined that for the year 1973, a cost-of-living adjustment in the amount of $992 is due to the plaintiff. Similarly a cost-of-living adjustment in the amount of $1768 is due to the plaintiff for the year 1974.

## IV

We finally turn to the plaintiff's remaining assignment of error: that the court erroneously concluded that a modification in alimony and support was warranted because of a substantial change in the circumstances of the parties. As we recently stated, "Connecticut unequivocally follows the widely established rule that no modification of alimony or support is to be granted unless there has been a showing of a substantial change in the circumstances of either party. General Statutes § 46-54." *Grinold* v. *Grinold,* 172 Conn. 192, 195, 374 A.2d 172. The court must be satisfied that the changed circumstances requiring a modification were not contemplated by the parties at the time of the entry of the decree, that they are substantial, and that they arose subsequent to the entry of the original decree. *Grinold* v. *Grinold,* id.; see 2A Nelson, Divorce and Annulment (2d Ed.) § 17.07. Nevertheless, the court's conclusions must be tested by the finding, which must establish a reasonable basis for those conclusions. *Hutensky* v. *Avon,* 163 Conn. 433, 437, 311 A.2d 92; *Cecio Bros., Inc.* v. *Feldmann,* 161 Conn. 265, 271, 287 A.2d 374.

An examination of the finding reveals that in 1973 the defendant was forced to retire as comptroller of

Mobil Oil Corporation because of a severe heart condition. Concomitant with his retirement, the defendant's salary was reduced, first from approximately $85,000 to $32,394.96, and, after October 1, 1976, to $27,186. Following his retirement the defendant suffered two heart attacks, severe angina, and underwent open heart quadruple bypass surgery, all of which severely debilitated him. The court found further that the plaintiff's assets had increased over the years, while the defendant's expenses were now in excess of his income.

In determining whether the court erred in granting a modification of alimony, we focus on whether the court abused its discretion. "[T]he ultimate issue is whether the court could reasonably conclude as it did." *Aguire* v. *Aguire,* 171 Conn. 312, 314, 370 A.2d 948; *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 584, 362 A.2d 835. There was no error in the court's findings or conclusions. Although we find no decision of this court squarely on point, a substantial number of courts have held that where, as here, there was a substantial impairment of the paying spouse's health, causing early retirement, which resulted in a marked decrease in income and, hence, ability to pay, there exist "changed circumstances" such as to warrant a modification in alimony payments. *Schmidt* v. *Schmidt,* 275 Minn. 268, 146 N.W.2d 185; *Baker* v. *Baker,* 28 Ill. App. 3d 680, 329 N.E.2d 408; see generally, 2A Nelson, Divorce and Annulment, op. cit., §§ 17.16, 17.17; annot., 18 A.L.R.2d 10, §§ 8, 13; 24 Am. Jur. 2d, Divorce and Separation §§ 677–679. While the serious impairment of the defendant's health affecting his ability to pay alimony might not, in and of itself, have *required* a modification of alimony; see *Arnold* v. *Arnold,* 332 Ill. App. 586, 76 N.E.2d 335; we cannot

say that the court abused its discretion in the present case in granting the defendant's motion for modification.

There is error in part, and the judgment is to be modified in accordance with this opinion.

In this opinion the other judges concurred.