HAROLD JEFFREY DARAK *v.* ROBYN GALE DARAK
(13530)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and HULL, Js.

Argued February 1—decision released March 21, 1989

*Dominick J. Thomas, Jr.,* with whom was *Catherine E. Teitell,* for the appellant (defendant).

*Deborah S. Chang,* with whom, on the brief, was *David J. Elliott,* for the appellee (plaintiff).

PETERS, C. J. The principal issue in this appeal is whether a statutory change in the principles governing modification of matrimonial financial orders applies immediately to any motion for modification filed after the effective date of the act or applies only prospectively to dissolution decrees entered after its effective date. Subsequent to the effective date of Public Acts 1987, No. 87-104[1] (the act), the defendant, Robyn Gale Darak, moved the trial court to modify her award of alimony and child support in light of the changed financial circumstances of the plaintiff, Harold J. Darak. This motion was initially granted, but ultimately denied, on the trial court's ruling that the parties had contem-

---

[1] Public Acts 1987, No. 87-104 repealed General Statutes § 46b-86 (a) and replaced it with the following: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. After the date of judgment, modification may be made upon

plated the changed circumstances and that the new act, which eliminated this consideration, applied prospectively only. The defendant appealed to the Appellate Court and we transferred the appeal here pursuant to Practice Book § 4023. We find error in part of the trial court's judgment.

The underlying facts are undisputed. The trial court, *Nash, J.,* dissolved the three and one-half year marriage between the plaintiff and the defendant on December 3, 1986. Pursuant to the parties' dissolution agreement, the trial court granted custody of the couple's minor child to the defendant and directed the plaintiff to pay the defendant $125 per week in unallocated alimony and child support. At the time of the dissolution, the plaintiff earned $798.08 weekly ($549.14 net) and the defendant earned $125 weekly ($122.18 net).

On October 23, 1987, the defendant moved the trial court to modify its alimony and child support order because of a substantial improvement in the plaintiff's financial situation. After a hearing at which the parties submitted financial affidavits, the trial court, *Damiani, J.,* found that a substantial change in financial circumstances had indeed occurred, the plaintiff's earnings having significantly risen, while those of the defendant had diminished.[2] The court also found, however, that the parties had contemplated the income increase at the time of the dissolution.

a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution. By written agreement, stipulation or by decision of the court, those items or circumstances that were contemplated and are not to be changed may be specified in the written agreement, stipulation or decision of the court. This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law."

The act became effective on October 1, 1987.

[2] The court found that the plaintiff then earned $1076.92 weekly ($831.13 net) and the defendant then earned $113 weekly ($88 net).

The trial court initially ruled that, by virtue of the enactment of Public Acts 1987, No. 87-104, the defendant was entitled to a modification, despite the fact that the change in financial circumstances had been contemplated at the time of the dissolution. The court acknowledged that, under this court's interpretation of General Statutes § 46b-86 (a), prior to its 1987 amendment,[3] no such modification would have been allowable. *Grinold* v. *Grinold,* 172 Conn. 192, 195, 374 A.2d 172 (1976). As amended by the new act, however, § 46b-86 (a) now permits a modification without regard to prior contemplation of financial changes. The court held the new act to be procedural and remedial and hence applicable to the defendant's motion for modification because her motion had been filed after the effective date of the new act. The court rejected the plaintiff's argument that the act should only apply to dissolution decrees entered after its effective date. In accordance with its ruling granting the motion for modification, the court, on December 18, 1987, entered new monetary orders for child support of $150 per week and alimony of $100 per week. Thereafter, the court awarded the defendant an allowance of $2000 in attorney's fees to defend against an appeal taken by the plaintiff from the trial court's ruling.[4]

---

[3] General Statutes (Rev. to 1987) § 46b-86 (a) provides: "(Formerly Sec. 46-54.) MODIFICATION OF ALIMONY OR SUPPORT ORDERS AND JUDGMENTS. (a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law."

[4] The defendant filed a cross appeal challenging the finding that the parties had contemplated the plaintiff's changed financial circumstances. The Appellate Court granted the plaintiff's motion to dismiss this cross appeal as untimely.

During the pendency of the plaintiff's appeal, he moved the trial court to reconsider its ruling that the act applies retrospectively.[5] In response, the defendant moved for reconsideration of the finding that the parties had contemplated the change in financial circumstances.

On March 31, 1988, the trial court granted the plaintiff's motion for reconsideration and, upon reconsideration, reversed its previous decision and denied the defendant's motion for modification. Relying on the Appellate Court's intervening decision in *LaBow* v. *LaBow,* 13 Conn. App. 330, 537 A.2d 157, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988), the trial court concluded that the act should apply only prospectively.[6] The trial court denied the defendant's motion to reconsider its finding of contemplation. The court further ordered that the plaintiff was entitled to a credit of $5 per week to make up for the amounts he had paid to the defendant pursuant to the previous court order.

This case is now before us on appeal by the defendant.[7] She claims that the trial court erred in: (1) ruling that the act applies prospectively only to dissolution judgments entered after the act's effective date; (2) concluding that the parties had contemplated the substantial change in financial circumstances; and (3) making financial awards that retroactively denied the defend-

---

[5] During the trial court's resolution of this motion, the parties agreed to a court ordered stay of the court's allowance of attorney's fees.

[6] In *LaBow* v. *LaBow,* 13 Conn. App. 330, 344–45 n.5, 537 A.2d 157, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988), the Appellate Court construed the act to be a substantial change in the law and to affect the substantive rights of the parties. Accordingly, it determined that the legislature presumably intended that the act should not apply to matters pending in appellate courts.

[7] The plaintiff withdrew his appeal.

On April 20, 1988, the defendant moved for an allowance of attorney's fees and costs to prosecute the appeal. The trial court granted her motion, ordering the plaintiff to pay her $2500.

ant attorney's fees during the pendency of the plaintiff's motion for reconsideration, and prospectively diminished the defendant's financial support by the increased amount of alimony and child support awarded to the defendant by its December 18, 1987 decision.

I

The defendant's argument about the applicability of the amended § 46b-86 (a) encompasses three claims. She maintains that the new act should apply to all motions for modification filed after its effective date because: (1) even applied prospectively, the act encompasses her motion; (2) the act represents a clarification of the legislature's original intent rather than a substantive change in § 46b-86 (a); and (3) any contrary construction would impair her constitutional rights to equal protection of the laws. We are unpersuaded by any of these claims.

A

The rules of statutory construction that govern the applicability of new legislation to preexisting transactions are well established. Our point of departure is General Statutes § 55-3, which states: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." "The 'obligations' referred to in the statute are those of substantive law." *Nagle* v. *Wood,* 178 Conn. 180, 186, 423 A.2d 875 (1979). Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only.[8] *Westport* v. *State,* 204 Conn. 212, 219, 527 A.2d

---

[8] We, of course, still recognize "the continued vitality and utility of the principle that procedural statutes will be applied retroactively absent contrary legislative intent . . . ." *State* v. *Lizotte,* 200 Conn. 734, 740, 517 A.2d 610 (1986); see also *State* v. *Paradise,* 189 Conn. 346, 351, 456 A.2d 305 (1983).

1177 (1987); *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 174, 479 A.2d 1191 (1984); *Enfield Federal Savings & Loan Assn.* v. *Bissell,* 184 Conn. 569, 571, 440 A.2d 220 (1981). The legislature only rebuts this presumption when it "clearly and unequivocally" expresses its intent that the legislation shall apply retrospectively. *State* v. *Lizotte,* 200 Conn. 734, 741, 517 A.2d 610 (1986); *Schieffelin & Co.* v. *Department of Liquor Control,* supra, 174; *Enfield Federal Savings & Loan Assn.* v. *Bissell,* supra, 572.

The amended § 46b-86 (a) falls within the rubric of legislation that affects substantive rights because it increases statutory liability. *Hunter* v. *Hunter,* 177 Conn. 327, 332, 416 A.2d 1201 (1979); *Little* v. *Ives,* 158 Conn. 452, 457, 262 A.2d 174 (1969). The new act increases the plaintiff's statutory exposure by subjecting him to the risk of modified financial orders even for previously contemplated salary increases, when prior law would have afforded him immunity from such liability. Thus, because the act is substantive in nature, we presume that the legislature intended it to have prospective applicability. *Westport* v. *State,* supra, 219; *Schieffelin & Co.* v. *Department of Liquor Control,* supra, 174. The defendant has directed us to no "clear and unequivocal" language in the act, and we have found none, that would support a contrary inference in favor of retrospective application. Accordingly, we hold that the act applies prospectively only.[9] Cf. *Schieffelin & Co.* v. *Department of Liquor Control,* supra, 174 (use of the words "has had" denotes retrospective application); *Enfield Federal Savings & Loan Assn.* v. *Bissell,* supra, 572 (statute explicitly directs application to pending appeals).

---

[9] The defendant offers no support, and we have found none, for her argument that the doctrine of retroactivity does not apply where the legislature overturns a judicial interpretation of a statute rather than a purely legislative act.

Although at trial the defendant maintained that the new act made only procedural changes that could be applied retrospectively, she now concedes that the act can have only prospective application. The question that presently divides the parties is what prospective applicability means in this case. The defendant argues that it includes all motions for modification filed after the effective date of the act, while the plaintiff argues that it must be confined to dissolution decrees entered after that date. We agree with the plaintiff.

As a matter of common sense, the defendant's argument cannot prevail. Accepting her interpretation of prospective applicability would leave pre-act dissolutions vulnerable to modifications that would previously have been disallowed. The ineluctable result would be to apply the act retrospectively. See *Muha* v. *United Oil Co.,* 180 Conn. 720, 729, 433 A.2d 1009 (1980). "Strict construction to prevent retroactive operation has often been applied in order that the statute would not violate contract obligations or interfere with vested rights." 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1986) § 41.04, p. 349. The parties in this case negotiated their dissolution agreement well aware, as the trial court found, of the plaintiff's future earning capacity and of the law regarding modifications. Acceptance of the defendant's proposed application of the act would disrupt settled expectations. We will not construe the act in such a manner absent a specific mandate from the legislature. *State* v. *Lizotte,* supra, 741; *Hunter* v. *Hunter,* supra, 331.

To the extent that the legislature addressed the time frame relevant to the applicability of the act, its choice of language supports the construction we have adopted. Far from rebutting § 55-3, the legislature made clear its intention that the time of the entry of a dissolution decree was to be the focal point of the act's applicability. As a partial offset to the policy decision generally

permitting broader modifiability of financial orders, the act provides: "By written agreement, stipulation or by decision of the court, those items or circumstances that were contemplated and are *not* to be changed *may be specified in the written agreement, stipulation, or decision of the court.*" (Emphasis added.) Public Acts 1987, No. 87-104. In effect, this portion of the act reverses the burden of proof with regard to contemplation. Whereas, until now, the party moving for modification has had to prove that the changed circumstances were uncontemplated at the time of dissolution; *McCann* v. *McCann*, 191 Conn. 447, 451, 464 A.2d 847 (1983); *Sanchione* v. *Sanchione*, 173 Conn. 397, 407, 378 A.2d 522 (1977); under the new act, the party resisting modification will have to prove, by pointing to a written agreement, stipulation or decision of the court, that "those items or circumstances . . . were contemplated and are not to be changed." See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1987 Sess., p. 300. This provision of the act can only apply to dissolutions entered after October 1, 1987, because the parties to pre-act dissolutions would not have had access to the statutorily mandated means to avoid modifications. Thus, reading the act as a whole, as we must, we conclude that the indubitable prospective application of this provision equally dictates the prospective application of the other.[10] See *Nicotra Wieler Investment Manage-*

---

[10] *Lupien* v. *Lupien*, 192 Conn. 443, 472 A.2d 18 (1984), upon which the defendant relies, does not persuade us otherwise. In *Lupien* the marriage of the parties had been dissolved prior to the enactment in 1978 of General Statutes § 46b-86 (b), which allowed for the modification of periodic alimony "upon a showing that the party receiving the periodic alimony is living with another person under circumstances which . . . cause such a change of circumstances as to alter the financial needs of that party." We applied the 1978 statute to a 1980 motion for modification. Because the parties in *Lupien* did not raise the question, we did not there consider the issue of the retrospective application of § 46-86 (b). Our decision in *Lupien* is therefore inapposite here. See *State* v. *Magnano*, 204 Conn. 259, 277, 528 A.2d 760 (1987).

*ment, Inc.* v. *Grower,* 207 Conn. 441, 451, 541 A.2d 1226 (1988); *Gentry* v. *Norwalk,* 196 Conn. 596, 606, 494 A.2d 1206 (1985); 2A J. Sutherland, supra.

B

The prospective application of new legislation is premised on the assumption that the legislature has intended to make a change in existing law. The defendant urges an end run around this presumption on the hypothesis that the legislature passed the new act not to make a change but "to correct inequity resulting from the judiciary's interpretation" of § 46b-86 (a). She claims that the legislature responded to the Appellate Court's decision in *Harlan* v. *Harlan,* 5 Conn. App. 355, 498 A.2d 129 (1985), and that, as clarifying legislation, the new act applies to all future motions for modification. We are not persuaded.

In principle, a statutory amendment that construes and clarifies a prior statute operates as the legislature's declaration of the meaning of the original act. *State* v. *Blasko,* 202 Conn. 541, 558, 522 A.2d 753 (1987); *Neyland* v. *Board of Education,* 195 Conn. 174, 180, 487 A.2d 181 (1985). " '[I]f the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act . . . .' " *State* v. *Blasko,* supra, 558, quoting 1A J. Sutherland, supra, § 22.31, p. 276; see also *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 200 Conn. 630, 640, 513 A.2d 52 (1986). To determine whether an act should be characterized as clarifying legislation, we look to the legislative history to determine the legislative intent. *State* v. *Blasko,* supra, 558.

While the defendant claims that the act was a "swift response" to the law as announced in *Harlan* v. *Harlan,* supra, and thus a clarification of § 46b-86 (a),

the legislative history indicates awareness that this court had long interpreted § 46b-86 (a) to include a contemplation requirement. *Harlan* is mentioned only once in the legislative history, and then by a nonmember of the General Assembly who referred to it as "[o]ne of the most recent cases" of the courts' use of the contemplation doctrine. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1987 Sess., p. 298. More often the legislators referred to "our case law," "other cases" and "some court decisions," when describing the state of the law that they sought to affect. See 30 H.R. Proc., Pt. 8, 1987 Sess., pp. 2619, 2723 (Rep. Richard D. Tulisano) and 2620 (Rep. Richard O. Belden).

As the defendant recognizes, in *Grinold* v. *Grinold,* 172 Conn. 192, 374 A.2d 172 (1976), we first interpreted § 46b-86 (a) as not affecting substantial changes contemplated at the time of dissolution. Since *Grinold,* this court and the Appellate Court have applied the doctrine of contemplation many times. See, e.g., *Connolly* v. *Connolly,* 191 Conn. 468, 473, 464 A.2d 837 (1983); *McCann* v. *McCann,* 191 Conn. 447, 451, 464 A.2d 825 (1983); *Scott* v. *Scott,* 190 Conn. 784, 790, 462 A.2d 1054 (1983); *Cersosimo* v. *Cersosimo,* 188 Conn. 385, 403, 449 A.2d 1026 (1982); *Kelepecz* v. *Kelepecz,* 187 Conn. 537, 538, 447 A.2d 8 (1982); *Benson* v. *Benson,* 187 Conn. 380, 382, 446 A.2d 796 (1982); *McGuinness* v. *McGuinness,* 185 Conn. 7, 9–10, 440 A.2d 804 (1981); *Bilosz* v. *Bilosz,* 184 Conn. 90, 93, 441 A.2d 59 (1981); *Noce* v. *Noce,* 181 Conn. 145, 147, 434 A.2d 345 (1980); *Theonnes* v. *Theonnes,* 181 Conn. 111, 113, 434 A.2d 343 (1980); *Bunche* v. *Bunche,* 180 Conn. 285, 290, 429 A.2d 874 (1980); *Cummock* v. *Cummock,* 180 Conn. 218, 220–21, 429 A.2d 474 (1980); *McGowan* v. *McGowan,* 179 Conn. 685, 687, 427 A.2d 852 (1980); *Swayze* v. *Swayze,* 176 Conn. 323, 337, 408 A.2d 1 (1978); *Fricke* v. *Fricke,* 174 Conn. 602, 602, 392 A.2d 473 (1978);

*Friedly* v. *Friedly,* 174 Conn. 279, 280, 386 A.2d 236 (1978); *Ribner* v. *Ribner,* 6 Conn. App. 98, 101, 503 A.2d 612 (1986); *Howat* v. *Howat,* 1 Conn. App. 400, 403, 472 A.2d 799 (1984).

This history persuades us that the act was not "a classic reaction to a judicial interpretation that was deemed inappropriate." *State* v. *Magnano,* 204 Conn. 259, 283, 528 A.2d 760 (1987). Rather than clarifying its earlier intention in enacting the original statutory language, the legislature decided, as a matter of policy, to change a rule ingrained in nearly thirteen years of case law. Such a change in the law must presumptively be applied prospectively.

## C

Finally, the defendant claims that a construction of the act limiting its applicability to those whose dissolution decrees postdated October 1, 1987, would deprive her of the equal protection of the laws in violation of the fourteenth amendment to the United States constitution and article first, § 20 of the Connecticut constitution.[11] She maintains that, for the class of formerly married persons, it is constitutionally impermissible to enact different rules depending upon the dates when such marriages were dissolved. We disagree.

The equal protection clause mandates like treatment for all persons who are similarly situated. *Barde* v. *Board of Trustees,* 207 Conn. 59, 65, 539 A.2d 1000 (1988). Its predicate is a determination of who are the persons similarly situated. In our view, in this case the class of persons similarly situated consists of all persons receiving alimony or support whose marriages were dissolved before October 1, 1987. See *United*

---

[11] The equal protection clauses of the state and federal constitutions have like meaning and may therefore be considered together. *Zapata* v. *Burns,* 207 Conn. 496, 504–505, 542 A.2d 700 (1988); *Daily* v. *New Britain Machine Co.,* 200 Conn. 562, 577, 512 A.2d 893 (1986).

*States* v. *Frady,* 456 U.S. 152, 160–62, 102 S. Ct. 1584, 71 L. Ed. 2d 816, reh. denied, 456 U.S. 1001, 102 S. Ct. 2287, 73 L. Ed. 2d 1296 (1982); *Dortch* v. *State,* 142 Conn. 18, 29–30, 110 A.2d 471 (1954). The new act, as we have construed it, will enable the defendant to continue to receive the same treatment as every other member of her class and thus does not deprive her of the equal protection of the laws.

## II

The defendant next challenges the validity of the trial court's conclusion that § 46b-86 (a) (as amended to 1987) barred her eligibility for modified financial support from the plaintiff because the parties had contemplated the plaintiff's salary increase at the time of the dissolution decree. The defendant makes two claims: that the trial court's finding was unsubstantiated as a matter of fact, and that its conclusion was unwarranted as a matter of law. We disagree with both.

The defendant's attack on the finding of fact focuses on the absence of language in the dissolution agreement indicating that the parties had contemplated a substantial increase in the plaintiff's income. We have never required such a contemplation to be memorialized by a writing. The applicable test is simply that "[a] party seeking modification must show 'a substantial change in the circumstances of either party, occurring subsequent to the entry of the original decree, and *not contemplated by the parties at that time.*' " (Emphasis added.) *McCann* v. *McCann,* 191 Conn. 447, 450–51, 464 A.2d 825 (1983), quoting *Noce* v. *Noce,* 181 Conn. 145, 147, 434 A.2d 345 (1980); *Sanchione* v. *Sanchione,* 173 Conn. 397, 407, 378 A.2d 522 (1977). The moving party, in this case the defendant, bears the burden of demonstrating that the parties did not contemplate the plaintiff's changed financial situation and cannot simply argue that the trial court did not have sufficient

evidence in the record.[12] Furthermore, " '[t]he unquestioned rule [in a modification action] is that great weight is due to the action of the trial court and every reasonable presumption will be made in favor of its correctness.' *Noce* v. *Noce,* supra, 149; see *Swayze* v. *Swayze,* 176 Conn. 323, 337–38, 408 A.2d 1 (1978). As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case, such as demeanor and attitude of the parties at the hearing." *McGuinness* v. *McGuinness,* supra, 13. The test is whether the court could reasonably conclude as it did. *Hardisty* v. *Hardisty,* 183 Conn. 253, 260, 439 A.2d 307 (1981); *Koizim* v. *Koizim,* 181 Conn. 492, 497, 435 A.2d 1030 (1980).

The record amply supports the trial court's finding of fact. During the parties' three and one-half year marriage, the plaintiff's salary had more than doubled as a result of his successful completion of several parts of the examinations required to attain accreditation as an actuary. The defendant knew, at the time of the dissolution action, that the plaintiff planned to finish this series of examinations and would, after the tenth and final examination, become a corporate officer at a substantially higher salary. In light of these underlying facts, whose accuracy the defendant does not challenge, the trial court could reasonably have found that the parties had contemplated the plaintiff's increase in income at the time of dissolution.

The defendant's alternate argument that the trial court erred as a matter of law is equally unavailing. In effect, the defendant urges us to overrule the contemplation doctrine that we adopted in *Grinold* v. *Grinold,* 172 Conn. 192, 195, 374 A.2d 172 (1976); as

---

[12] The moving party no longer bears such a burden under Public Acts 1987, No. 87-104.

a misinterpretation of legislative intent and of the criteria listed in a treatise upon which we relied. We decline to do so. Our long-standing interpretation of the governing statute was grounded in well established doctrines of res judicata, sanctity of contract and finality of litigation, doctrines recognized by many jurisdictions in similar contexts.[13] Especially in cases such as this, in which the defendant moved to modify the judgment a mere ten months after the decree of dissolution, we find nothing inequitable in the presumption that the parties anticipated future changes in their respective financial circumstances.

## III

The defendant's final claim urges us to find error in two of the trial court's financial orders. The defendant claims that the trial court erroneously: (1) denied her attorney's fees by granting the plaintiff's motion to stay a previously entered order pending resolution of the plaintiff's motion for reconsideration of the court's original ruling on the defendant's motion for modification; and (2) reduced her financial award by the added amounts that she had received in accordance with the court's original ruling on her motion for modification.

## A

The trial court awarded the defendant an allowance of $2000 for attorney's fees to enable her to defend an appeal that the plaintiff had taken from the court's initial modification of her orders for support and alimony.

---

[13] See, e.g., *Hinchey* v. *Hinchey,* 722 P.2d 949, 952 (Alaska 1986); *In re Marriage of Carlson,* 338 N.W.2d 136, 141 (Iowa 1983); *Williams* v. *Williams,* 444 A.2d 977, 980 (Me. 1982); *Sholl* v. *Sholl,* 216 Neb. 289, 290, 343 N.W.2d 742 (1984); *Sylvia* v. *Sylvia,* 146 Vt. 596, 597, 508 A.2d 708 (1986); *Clifford* v. *Clifford,* 133 Vt. 341, 344, 340 A.2d 60 (1975); *Wagner* v. *Wagner,* 95 Wash. 2d 94, 98, 621 P.2d 1279 (1980); *Goff* v. *Goff,* 356 S.E.2d 496, 500–501 (W. Va. 1987); *Moore* v. *Moore,* 89 Wis. 2d 665, 669, 278 N.W.2d 881 (1979).

Two months later, when the plaintiff moved for reconsideration of the court's order, the plaintiff successfully moved for a stay of this award.[14] When the plaintiff prevailed on the motion for reconsideration, the plaintiff withdrew his appeal. The defendant thereafter filed the present appeal on her own behalf, and was granted an allowance of $2500 for this purpose.[15] Thus, at each relevant juncture, the trial court granted the defendant attorney's fees.

In domestic cases the trial court has the authority, pursuant to General Statutes § 46b-62, to consider the parties' respective financial situations and to award counsel fees to ensure that a lack of funds does not deprive one party of his or her rights. *Koizim* v. *Koizim,* supra, 501; *Ridolfi* v. *Ridolfi,* 178 Conn. 377, 380, 423 A.2d 85 (1979). " ' "Whether to allow counsel fees, and if so in what amount, calls for the exercise of judicial discretion." ' " *Holley* v. *Holley,* 194 Conn. 25, 33–34, 478 A.2d 1000 (1984); *El Idrissi* v. *El Idrissi,* 173 Conn. 295, 301–302, 377 A.2d 330 (1977). Nothing in the record convinces us that the trial court abused its wide discretion in awarding attorney's fees to the defendant in this case.

### B

Finally the defendant argues that the trial court erred in the financial order it made following its decision to reconsider its original order modifying the defendant's award of support and alimony. Upon reconsideration, the court ordered that the plaintiff receive a credit for the additional amount he had paid under the modified order. The defendant challenges the propriety of this credit. We agree.

---

[14] The plaintiff represents that the defendant consented to this stay, which the defendant has never disputed.

[15] The trial court also denied the plaintiff's motion for an allowance of attorney's fees to defend the defendant's appeal.

In its original award of modified support and alimony, on December 18, 1987, the trial court increased the plaintiff's financial obligation to the defendant from $125 per week for unallocated alimony and child support to weekly payments of $150 for child support and $100 for alimony. This award was made retroactive to November 20, 1987, the date of the defendant's filing of a financial affidavit in support of her motion for modification. On March 31, 1988, having granted the plaintiff's motion for reconsideration, and having denied the motion for modification, the court granted the plaintiff's request for a credit for the amount of money he had paid to the defendant pursuant to the trial court's prior decision. The court awarded the plaintiff a credit of $5 per week.

Awards of support and alimony fall within the trial court's equitable powers and " ' "[t]he power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of marriage." ' " *LaCroix* v. *LaCroix,* 189 Conn. 685, 689, 457 A.2d 1076 (1983); *Robinson* v. *Robinson,* 187 Conn. 70, 72, 444 A.2d 234 (1982). The plaintiff has not challenged the trial court's factual finding that an equitable redistribution of the financial resources of the parties would have been warranted, in accordance with the court's December order, but for the application of the contemplation doctrine. We must therefore presume that the additional $125 then awarded to the defendant, far from being excessive, represented moneys that she needed to sustain the standard of living to which she and the child were entitled. *Stoner* v. *Stoner,* 163 Conn. 345, 354, 307 A.2d 146 (1972); H. Clark, Law of Domestic Relations (1968) § 14.5, p. 444.

When the trial court correctly concluded, after reconsideration in March, that it could not allow a financial modification in this case, the court became powerless

to enforce its December award of alimony and support for the future. Its remedial order, however, does not return the defendant to the terms of the prior weekly order for alimony and child support, but diminishes further the amount of the payment she will receive from the plaintiff. Imposition of the credit order requires the defendant to live under financial circumstances even more stringent than those deemed to be fair and equitable at the time of the dissolution decree. In effect, the court has ordered a retroactive modification of alimony and support. We have previously construed § 46b-86 as not authorizing such a retroactive modification. *Sanchione* v. *Sanchione,* 173 Conn. 397, 406–407, 378 A.2d 522 (1977).

Given the substantial disparity in the financial resources between the parties in this case, we conclude that it is more appropriate for the plaintiff than for the defendant to bear whatever hardship ensues from the trial court's mistaken ruling of December 18, 1987. Without a credit, the plaintiff, earning a salary of $56,000 per year, must merely pay the same weekly amount of $125 in unallocated alimony and child support that he initially agreed to pay at the time of the dissolution decree, when he was earning considerably less. With a credit, the defendant loses available financial resources as a result of advancing arguments which, though ultimately unpersuasive, are not so frivolous as to warrant an inference of lack of good faith on her part. Indeed, no claim of lack of good faith has been advanced by the plaintiff. On this record, it was not "a just and equitable resolution of the marital dispute"; *Sands* v. *Sands,* 188 Conn. 98, 105, 448 A.2d 822 (1982), cert. denied, 459 U.S. 1148, 103 S. Ct. 792, 74 L. Ed. 2d 997 (1983); to order a reduction in the plaintiff's weekly payment to $120. The trial court's order of a $5 per week credit was therefore in error.

There is error in part, and the trial court's judgment is directed to be modified to delete the award to the plaintiff of a credit for moneys paid to the defendant under the trial court's prior decision.

In this opinion the other justices concurred.