Hayhurst v. Timberlake               CV-94-199-SD  07/08/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Donald Hayhurst, N.M.D.

   v.                                          Civil No. 94-199-SD

Robert Timberlake, et al


O R D E R


This diversity action concerns allegations of libel, slander, and conspiracy.  By order dated May 15, 1996, the court conditionally granted summary judgment for defendants, but granted plaintiff leave to move to amend his complaint. Presently before the court is plaintiff's motion to reconsider said order, brought pursuant to Rule 59(e), Fed. R. Civ. P.  The background of this case was outlined by the court in the previous order, and such recitation of facts will not be repeated here.


Discussion

1.  Publication of the AANP Quarterly Article to New Hampshire Legislators

In its previous order, the court ruled that despite the allegations in the complaint, plaintiff had not produced sufficient evidence to support his contention that defendants had

published an article appearing in defendants' publication, The AANP Quarterly, to two state representatives. The court's ruling was based on affidavits of both legislators stating that they did not recall receiving such material from defendant Robert Timberlake. The court also noted that it was not persuaded by plaintiff's argument in response, which was merely to point out that defendants had provided other allegedly defamatory material to the legislators.

In his motion to reconsider, plaintiff argues that he has now produced sufficient circumstantial evidence of the publication to the two legislators to avoid summary judgment. First, plaintiff notes that he attached to his objection to defendants' summary judgment motion an affidavit of Patricia DeSilvio, N.D., in which she claims to have picked up a package of materials from the "state" regarding the proposed legislation concerning licensure of naturopaths. He now asserts, without supporting documentation, that DeSilvio will testify at trial that the material was obtained from Representative Wheeler's office and that it contained the accused AANP article. He further states that DeSilvio will testify at trial that she also obtained the article from the House Committee Research Office.

Rule 56(e), Fed. R. Civ. P., provides in relevant part:

> When a motion for summary judgment is made and
> supported as provided in this rule, an adverse

2

> party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

As plaintiff's circumstantial evidence of publication rests primarily upon his unsupported assertions of what DeSilvio "will testify at trial," and as plaintiff has not submitted specific facts via affidavits or otherwise, the court will not alter its original ruling.

Moreover, even had the plaintiff provided circumstantial evidence that Timberlake sent a copy of the AANP article to Representative Wheeler's office, plaintiff still has not fulfilled the requirements of establishing publication. To satisfy its burden of proof, plaintiff must not only show that defendants made the defamatory material available to a third person, but also that the third person understood its significance. See RESTATEMENT (SECOND) OF TORTS § 613, cmt. d (1976). As plaintiff has provided no evidence to contradict the affidavit of Representative Wheeler, in which she states that she does not even recall seeing the AANP article, much less reading it, see Affidavit of Katherine Wheeler ¶ 8 (attached to Plaintiff's Motion to Reconsider), plaintiff has not satisfied his burden of showing Representative Wheeler understood the significance of the materials.

3

2. Publication of Deposition Testimony and the Sheriff's Report to the New Hampshire Legislators

In his motion for reconsideration, plaintiff argues that the court erred by ruling that defendants were protected by a conditional privilege when Timberlake published excerpts from deposition testimony taken in another trial, and a sheriff's report, to members of the state legislature. Timberlake submitted the materials in response to a request by members of the legislature for information about Hayhurst's credentials. At the time, the legislature was considering a bill that would impose licensing requirements on the practice of naturopathy, and Timberlake had testified before a legislative committee regarding the bill. The court need not address plaintiff's contentions, however, because the ruling to dismiss this portion of plaintiff's claim is sustainable on the alternate ground that such communications are protected by an absolute privilege.[1]

Absolute privileges are reserved for those situations where "the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives." Supry v. Bolduc, 112 N.H. 274, 276, 293 A.2d 767, 769 (1972) (citing W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF

---

[1]In its previous order, the court deferred ruling on the issue of absolute immunity.

4

TORTS § 114, at 776, et seq. (4th ed. 1971)). It is settled in New Hampshire that statements made in the course of judicial proceedings constitute one such situation, provided that they are pertinent to the subject of the proceeding. See McGranahan v. Dahar, 119 N.H. 758, 762-63, 408 A.2d 121, 123-24 (1979) (citing cases and PROSSER AND KEETON, supra, § 114, at 777-78). This is because the potential harm inflicted on the defamed individual is "far outweighed by the need to encourage participants in litigation, parties, attorneys, and witnesses, to speak freely in the course of judicial proceedings." Id. at 763, 408 A.2d at 124. The courts of many states recognize that the common law rule of absolute immunity for statements made in the course of judicial proceedings applies with equal force to statements made in the course of legislative proceedings. See, e.g. PROSSER AND KEETON, supra, § 114, at 820 (5th ed. 1984) (and cases cited); Webster v. Sun Co., 731 F.2d 1, 4 (D.C. Cir. 1984), appealed after remand, 790 F.2d 157 (D.C. Cir. 1986); Yip v. Pagano, 606 F. Supp. 1566, 1570-73 (D.N.J. 1985), aff'd, 782 F.2d 1033 (3d Cir.), cert. denied, 476 U.S. 1141 (1986); Bio/Basics Int'l v. Ortho Pharmaceutical Corp., 545 F. Supp. 1106, 1114-15 (S.D.N.Y. 1982); DeSantis v. Employees Passaic County Welfare Ass'n, 568 A.2d 565, 567 (N.J. Super. App. Div.), cert. denied, 584 A.2d 231 (N.J. 1990); Jennings v. Cronin, 389 A.2d 1183, 1185 (Pa. Super.

Ct. 1978). The general proposition is articulated in the RESTATEMENT (SECOND) OF THE LAW OF TORTS § 590A: "A witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding." See also id. cmt. d (noting that the absolute privilege is similar in all respects to that enjoyed by witnesses in judicial proceedings).

It goes without saying that the public has a vital interest in ensuring the free flow of ideas and information to members of a state legislature when relevant to their consideration of particular legislation.

> "In order for a democratic government to govern democratically, it is necessary that an atmosphere be created whereby facts may be freely presented to the governing legislative body. Without such a free-speaking environment, individuals might be discouraged from addressing their government."

Webster, supra, 731 F.2d at 4 (quoting Sherrard v. Hull, 456 A.2d 59, 62 (Md. Ct. Spec. App.), aff'd, 460 A.2d 601 (Md. 1983)).

Just as the public has a vital and enduring interest in the full disclosure of facts pertinent to judicial proceedings, see McGranahan, supra, 119 N.H. at 762, 408 A.2d at 124, it has a similar interest in the complete disclosure of facts pertinent to

6

a legislative proceeding.[2]  Such interest would be seriously hampered if participants had reason to fear that statements made in aid of the truth-seeking function of the legislature could potentially subject them to liability for defamation.  Therefore, this court is convinced that the New Hampshire Supreme Court would adopt the common law rule that statements made in the course of proceedings of the state legislature are absolutely privileged from defamation actions--so long as such statements are pertinent to the proceeding.  It is important to note that the rule does not confer blanket protection upon all statements uttered in the course of a proceeding.  "The requirement [that the statements be pertinent] eliminates protection for statements made needlessly and wholly in bad faith."  McGranahan, supra, 119 N.H. at 763, 408 A.2d at 124.

This court has previously ruled that the deposition

---

[2]Indeed, one commentator has stated,

> Despite the narrowness with which the New Hampshire Supreme Court has construed the concept of absolute privilege, it seems likely that the considerations which led it to recognize absolute immunity for statements made in the course of judicial proceedings would lead it to extend the concept to statements made in the course of legislative proceedings.

8 RICHARD B. MCNAMARA, NEW HAMPSHIRE PRACTICE: PERSONAL INJURY § 5, at 12 n.38 (1988).

testimony submitted by Timberlake to the legislators was relevant to a legislative proceeding as it was made in direct response to an inquiry by members of the House of Representatives in conjunction with their consideration of a then-pending bill. Thus, clearly, it satisfies the pertinence requirement.

Moreover, the fact that Timberlake was not under oath when he submitted the materials to the state legislature should not prevent him from benefitting from the immunity.[3]  See Yip, supra, 606 F. Supp. at 1571 (unsworn communications to a legislature made preliminary to a proceeding are encompassed by the privilege); DeSantis, supra, 568 A.2d at 567; see also RESTATEMENT (SECOND) OF TORTS, supra, § 588, cmt. b ("It is not necessary that a [legislative witness[4]] give his testimony under oath [in order to be protected by an absolute privilege]; it is enough that he

---

[3]Nor is it dispositive that he did not give the information under subpoena. See, e.g., Yip, supra, 606 F. Supp. at 1571); Bio/Basics, supra, 545 F. Supp. at 1116 (observing that if such a rule existed, potential witnesses would be discouraged from voluntarily cooperating with legislative committees).  In Bio/Basics, the court required that the legislative entity have the subpoena power. Id. at 1116.  As it appears that testimony before the New Hampshire Legislature can potentially be compelled, see New Hampshire Revised Statutes Annotated 516:3, again, the issue is not dispositive.  At any rate, the parties have not raised the issue.

[4]Section 590A, "Witnesses in Legislative Proceedings", of the RESTATEMENT provides that the comments to section 588, "Witnesses in Judicial Proceedings", apply to section 590A as well.

is permitted to testify."); Webster, supra, 731 F.2d at 4-7 (extending common law rule to unsolicited comments made to legislature).

Accordingly, the court finds and herewith rules that, notwithstanding Timberlake's motivations, his submission of the materials to the legislature, being absolutely privileged, cannot serve as the basis of plaintiff's claims.

## Conclusion

For the foregoing reasons, the court denies plaintiff's motion to reconsider (document 107). With no objections interposed, the court further grants plaintiff's motion to amend the complaint (document 113), and directs that same should be docketed as of the date of this order.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

July 8, 1996

cc:  Linda A. Theroux, Esq.
     Roger Hooban, Esq.
     Gary M. Burt, Esq.
     Paul R. Kfoury, Esq.
     Robert A. Backus, Esq.

9