[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
In this case, plaintiff George F. Jackson, a former licensed Connecticut real estate broker, has sued defendants Donald and Marilyn Vaill, his clients from February 26 through August 26, 1988 under an exclusive listing agreement for the sale of their Goshen, Connecticut farm, to recover a commission allegedly due him under that agreement. The plaintiff seeks the commission in question in connection with the Vaills' post-agreement sale to the State of Connecticut of development rights in and to the subject farm, under General Statutes § 22-26aa et seq. According to the plaintiff, that sale resulted directly from his own efforts to market the farm during the period of the agreement. On that basis, he contends that he is entitled to receive 5% of the agreed-upon purchase price of the development rights in question, less the sum of $5,000 which the Vaills allegedly paid him for his services. CT Page 9737
The defendants have answered the plaintiff's complaint by admitting: that they were indeed parties to an exclusive listing agreement for the sale of their farm from February 26 through August 26, 1988; that the plaintiff, during the term of the agreement, had the exclusive right to sell the listed property, and thereby to earn a 5% commission on the sale; and that the plaintiff, during the period of the agreement, attempted to market the property. Answer ¶¶ 2, 3.
The defendants have also admitted that on May 8, 1988, while the agreement was still in effect, they filed an application with the State of Connecticut for the sale of development rights to the listed property: that on December 15, 1988 they executed an agreement to sell such development rights to the State; and that that agreement was finally consummated by the performance of a contract of sale on April 24, 1990. Id., ¶ 3.
The defendants have denied, however, that the sale of development rights to their property to the State violated their earlier agreement with the plaintiff; Id., ¶ 5; and have interposed special defenses that plaintiff's action is barred by the applicable statute of limitations, General Statutes § 52-576, that the listing agreement is unenforceable because it fails to comply with General Statutes § 20-325a, and that the plaintiff's action is barred by laches and estoppel. Special Defenses I-IV.
The case is now before the Court on the defendants' motion for summary judgment dated August 15, 1996. As grounds for their motion, the defendants assert: first, that the listing agreement is invalid and unenforceable under General Statutes § 20-325a(b), because it fails to list the addresses of all the parties thereto; second, that the sale of development rights in and to the subject property did not constitute a sale of the property, within the meaning of the listing agreement, and thus does not entitle the plaintiff to a commission thereunder; third, that the plaintiff's action is barred by the applicable statute of limitations, General Statutes § 52-576, because it was not "brought . . . within six years after the right of action accrued;" id.; and fourth, that the plaintiff is barred from pursuing this action under General Statutes § 20-325a(a), because he has not been a licensed Connecticut real estate broker since April 30, 1993. The defendants have supported their motion with: two memoranda of law; a sworn affidavit from defendant Donald Vaill; a copy of their exclusive listing agreement with the plaintiff for the sale of their farm; copies of correspondence to and from the State CT Page 9738 Commissioner of Agriculture concerning the proposed purchase of development rights in and to their farm; a copy of a $5,000 check they gave to the plaintiff after the sale of development rights was consummated; and a certificate of licensure from the State Department of Consumer Protection concerning the real estate license history of the plaintiff.
The plaintiff has opposed the defendants' motion with: his own memoranda of law and supporting personal affidavit; an additional piece of correspondence to the defendants from the State Department of Agriculture; copies of certain discovery responses and responses to requests for admission by the defendants; and certain uncertified excerpts from what appears to be a transcript of the deposition of defendant Marilyn Vaill.
From the above-referenced materials, the following facts have been presented for the Court's consideration on the instant motion.
FACTS
On February 26, 1988, plaintiff George F. Jackson, then a licensed Connecticut real estate broker, entered into an exclusive listing agreement with the defendants, Donald and Marilyn Vaill, for the sale of their farm in Goshen, Connecticut. The defendants' farm was located on Route 4 East of the rotary in Goshen, while their residence, which was also on Route 4, was located west of the rotary at an address known officially as 73 Sharon Turnpike, Goshen.
The parties' agreement was put in writing on a one-page, pre-printed form which listed the plaintiff's name and address in letterhead format at the top. The form contained no space for the property owners' address, and no typed or handwritten entry on the form was so labelled.
The body of the agreement provided in pertinent part as follows:
 I/We, Donald Vaill and Marilyn Vaill give you, ____________________________________________ Exclusive Right to Sell my/our real property located at Route 4, Goshen, Conn., 06756 for $2,300,000.00.
This exclusive right to sell will go into CT Page 9739 effect on FEB 26, 1988, and will remain effective through and including AUG 26, 1988.
* * * *
 I/We will pay you a service fee of 5% % of the agreed upon sales price.
Listing Agreement (on which all typed entries are italicized and all handwritten entries are bolded). The agreement was signed at the bottom by Donald and Marilyn Vaill on February 26, 1988. It was also signed at the bottom by George Jackson, though his signature is undated.
On May 8, 1988, the defendants filed a Land Preservation Application Form ("Application") with the State Department of Agriculture in Hartford. Submitted under the name of "Donald Vaill," with a listed address of "RT. 4, Goshen, CT 06756," the Application contained the following relevant entries:
PROBABILITY OF NON-AGRICULTURAL DEVELOPMENT:
 1. Active Negotiations or ---------- Estate Settlement
 2. Listed with Real Estate 
Agent ----------
 3. Low Probability of ---------- Operator Continuing
 4. Other Situation — Explain ---------- Flood Plain Inland Wetland that Precludes Development
 * * * *
 5. TOTAL ACRES YOU OWN 130 + or -
---------- TOTAL ACRES OFFERED 120 + or -
---------- LOCATION OF PROPERTY OFFERED RT. 4 EAST
---------- Zoning YES
CT Page 9740 ---------- * * * *
Id. (All handwritten entries are bolded). The Application was signed at the bottom by Donald and Marilyn Vaill on May 8, 1988.Id.
On October 11, 1988, the State responded in writing to the defendants' Application for sale of development rights to their farm. In a letter sent to "Donald R. and Marilyn S. Vaill" at "Box 62, Route 4, Goshen, Connecticut 06756," the State proposed to purchase such development rights "to 117 acres of land, more or less, situated on Route 4 in the towns of Goshen and Torrington" for the sum of $1,053,000.00. 10/11/88 Letter (attached to Vaill Affidavit as Exhibit C3). The defendants did not accept this offer. The State sent the defendants a second offer to purchase the development rights to their farm on December 12, 1988. 12/12/88 Letter (attached to Vaill Affidavit as Exhibit D4). This letter was also addressed to the defendants at "Box 62, Route 4, Goshen, Connecticut 06756." Id. The defendants accepted this offer on December 15, 1988. (Vaill Affidavit, ¶ 6).
The sale of development rights to the State was ultimately consummated on April 24, 1990, for a final purchase price of $1,017,976.94. Id., ¶ 7. Fee title to the property was retained by the defendants. Id.
In his affidavit, the plaintiff avers that his advertising and promotion of the farm during the period of the exclusive listing agreement was what prompted the State to purchase development rights in and to the farm. He states, more specifically, that:
 5. The State of Connecticut approached the Vaills to purchase the development rights to the Vaill Farm within the period of my listing agreement . . . and as a direct result of my advertising of said property. My advertising and promotion of the sale of said farm or any interest therein which the Vaills agreed to accept was the procuring cause which led the State to purchase the development rights to the Vaill Farm for $1,007,469.00 on April 24, 1990. In fact, the Vaills stated to me that the representative of the State approached them as a result of my advertising and CT Page 9741 promotion of the property. My commission was due when the State paid the Defendant (April 24, 1990).
 6. At the time of purchase, the Vaills acknowledged that my efforts and advertising during the above listing period were the procuring cause which directly produced the sale and partially compensated me for the same by paying me $5,000.00 of the commission due under my listing agreement which was $50,373.45. The Vaills promised to pay the balance by promising to give me an extended listing of the sale of the remaining rights in said Farm and when that sold, I would be paid the commission due me. Because of my longstanding friendship with the Vaills and belief that they were honorable people, I was willing to wait for payment. However, they broke their promise to me, did not give me an extended listing to sell their remaining rights in the Farm and have refused to pay me the remaining commission.
Jackson Affidavit, ¶¶ 5, 6.
Donald Vaill, in his affidavit, admits that on or about May 29, 1990, he and his wife sent the plaintiff a check for $5,000.00. Vaill Affidavit, ¶ 8. He insists, however, that the payment was made solely "as a gesture of appreciation for [the plaintiff's] efforts and to reimburse him for his out of pocket advertising expenses." Id. According to the defendants, Donald Vaill completed and filed the original Land Preservation Application Form "without any participation or involvement on the part of the plaintiff, George Jackson[.]" Id., ¶ 4.
George Jackson retired from the real estate business on April 30, 1993, when he allowed his real estate broker's license to lapse. Jackson Affidavit, ¶ 8. He commenced this lawsuit by service of process on July 11, 1995. Amended Return.
LAW
 I
CT Page 9742
"Summary judgment must be rendered if `the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Real Estate Auctions,Inc. v. Senie, 28 Conn. App. 563, 566-67, 611 A.2d 452 (1992), quoting Practice Book § 384. . . . "[T]he party opposing the motion [for summary judgment] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . The mere presence of an alleged adverse claim is not sufficient to defeat a motion for summary judgment. . . . Rather, the [nonmoving party] must recite specific facts . . . which contradict those stated in the [moving party's] affidavits and documents. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." (Citations omitted; internal quotation marks omitted.)Real Estate Auctions, Inc. v. Senie, supra, 567.
 II
The first ground upon which the defendants claim that they are entitled to summary judgment is that the listing agreement under which the plaintiff's claim arises is invalid and unenforceable under General Statutes § 20-325a(b), which at the time the parties entered their agreement provided as follows:
 "No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and address of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section CT Page 9743 47-5, and by the real estate broker or his authorized agent."
Id. (Emphasis added.) The defendants argue, more particularly, that the listing agreement violates Section 20-325a(b) because it does not list their residence address, and thus does not "contain the names and addresses of all the parties thereto[.]" Id.
In support of this claim, the defendants first argue that the only address associated with them on the listing agreement is that of the farm they then wished to sell, not that of their residence. Their farm, they claim, was located on Route 4 East of the rotary, whereas their residence was located on Route 4 West of the rotary, at an address known as 73 Sharon Turnpike.
The plaintiff disagrees, and so must this Court. Whether or not the defendants' residence in the rural community of Goshen may have been known by the official title of 73 Sharon Turnpike, it is apparent from the defendants' own writings that they customarily listed that address as "Route 4, Goshen." Thus on the Land Preservation Application Form which the defendants submitted to the State, they listed their own address, on a line specially designated therefor, as "RT. 4, GOSHEN, CT. 06756." Accordingly, the State used that very address plus a post office box number throughout its lengthy correspondence with them prior to the consummation of the sale of development rights here at issue. Surely, there is at least a genuine issue of material fact as to whether in fact the address contained in the listing agreement was the defendants' residence address.
The defendants' second argument on this subject is that even if "Route 4, Goshen, Connecticut 06756" is indeed their address, the listing agreement is invalid and unenforceable because that address is not so listed or denominated on the face of the agreement. In support of this argument, the defendants rely onArruda Realty, Inc. v. Doyon, 31 Conn. Sup. 617 (1978), in which the Appellate Session of this Court engaged in similar reasoning in upholding the granting of a motion for summary judgment as to a claim based on listing agreement with similar deficiencies.
In Arruda Realty, the listing agreement in question gave the plaintiff realtor the exclusive right to sell premises known as 20 Longview Drive, Windsor, Connecticut. Though that was also the residence address of the defendant owners, that fact did not appear anywhere in the agreement itself, which was CT Page 9744
 prepared on a printed form supplied by the plaintiff [, which] . . . contained several blank spaces, some of which were filed in, such as the name of the plaintiff as well as the location of the subject property, [which others, including t]he space for the defendant's or owner's address [,] w[ere]. . . . left blank.
Id., 619.
The plaintiff and the dissenting judge on the three-judge panel contended that, in view of the plaintiff's unchallenged affidavit establishing that 20 Longview Drive was indeed the defendant owner's residence address, there was at least a genuine issue of material fact as to the sufficiency of the listing agreement in question. The majority, however, disagreed for the following reasons:
 As to the second requirement of the statute, there was no compliance because the address of the defendant was not inserted. That constitutes a material omission. It may well be that the location of the property for sale is also the address of the defendant or owner. That fact, however, is not contained in the agreement but is furnished in an affidavit filed by the plaintiff. "A statute which restricts the conduct of an occupation which was lawful at common law should be construed with reasonable strictness." Connecticut Chiropractic Society, Inc. v. Murray, 146 Conn. 613, 617 [1959]." Whatever the characterization of the Statutes may be, effect must be given to the legislative intent as expressed by the wording used in the statute. . . . If the language of the statute is clear and unambiguous, we cannot subject its meaning to modification by construction." Colli v. Real Estate Commission, 169 Conn. 445, 450 [1975].
 There was no compliance by the plaintiff with the provisions of § 20-325a(b)(2) of the CT Page 9745 General Statutes. Since the statute provides that "[n]o person, licensed under the provisions of this chapter, shall commence or bring any action," the word "shall" connotes that the performance of this obligation is mandatory, as opposed to permissive. Akin v. Norwalk, 163 Conn. 68, 74 [1972]. The plaintiff was prohibited from commencing or bringing the action and no genuine issue of fact existed to prevent the granting of the defendant's motion for summary judgment.
Id., 620-21 (Emphasis added.)
There can be no serious question that the instant case, though not identical in all respects to the Arruda Realty case, is functionally indistinguishable therefrom. Here, as there, the residence address of the defendant owners was actually set forth in the body of the listing agreement, albeit only in the space specially reserved for the location of the listed property. InArruda Realty, the space specially reserved for the owner's address on the listing agreement was left blank. In this case, by contrast, no such space was provided on the agreement. This, however, is a distinction without a difference, for the critical deficiency in each agreement was its failure to indicate, expressly or otherwise, that the address of the listed property was also the owner's residence address. The Arruda Realty decision has never been overturned. In fact, it has consistently been cited with approval by our Supreme and Appellate Courts; New England LandCompany. Ltd. v. DeMarkey, 213 Conn. 612, 624 n. 11 (1990);Rostenberg-Doern Co. v. Weiner, 17 Conn. App. 294, 305 (1989);Howland v. Schweir, 7 Conn. App. 709. 714 (1986). This Court must therefore conclude, under the binding authority of Arruda Realty
and its progeny, that the listing agreement here in question was invalid and unenforceable under Section 20-325a(b) at the time it was entered into.
Notwithstanding the foregoing analysis, the plaintiff urges this Court to deny the defendants' motion for summary judgment under the authority of Public Act 94-240, which amended Section 20-325a by adding the following new subsection thereto:
 (c) Nothing in subsection (a) of this Section or subdivisions (2) to (6), inclusive, of subsection (b) of this section shall prevent CT Page 9746 any licensee from recovering any commission, compensation or other payment in respect to any acts done or services rendered, if such person has substantially complied with subdivisions (2) to (6), inclusive, of subsection (b) of this section and it would be inequitable to deny such recovery.
General Statutes § 20-325a(c). The plaintiff claims that the addition of this subsection to the statute was intended to have an immediate retroactive effect on all claims to recover commissions which were subject to the requirements of Section 20-325a. Therefore, he argues, the new statute applies to this claim and justifies his prosecution of that claim because he "substantially complied with subdivisions (2) to (6), inclusive, of subdivision (b) of [the statute] and it would be inequitable to deny [him] recovery." Conn. Gen. Stat. § 20-325a(c).
The defendants, naturally, disagree. On this score they argue that the changes effected in the statute by the passage ofPublic Act 94-240 were substantive rather than procedural, and thus that they are not to be given retroactive effect unless the Legislature "clearly and unequivocally expresse[d]" that intention. Darak v.Darak, 210 Conn. 462, 468 (1989) (quoting State v. Lizotte,200 Conn. 734, 741 (1986). Here, claim the defendants, the absence of any such clear and unequivocal expression of legislative intent renders the new statutory provisions inapplicable to the present controversy. Accordingly, they conclude that their motion for summary judgment must be granted.
In determining whether or not a statute is to be given retrospective application, our Supreme Court has employed the following test:
 "Our point of departure is General Statutes § 55-3, which states: `No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect.' The `obligations' referred to in the statute are those of substantive law. . . . Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall CT Page 9747 apply prospectively only. . . . The Legislature only rebuts this presumption when it clearly and unequivocally expresses its intent that the legislation shall apply retrospectively."
Rice v. Vermilyn Brown, Inc., 232 Conn. 780, 789 (quoting Darak v.Darak, supra, 467-68, with citations and internal quotations omitted.) Where, by contrast, the only changes effected by the passage of a statute are procedural, there is a countervailing presumption that the statute is to be applied retrospectively "absent a clear expression of legislative intent to the contrary."Rice v. Vermilyn Brown, Inc., supra, 786 n. 12 (citing Miano v.Thorne, 218 Conn. 170, 175 (1991) and Darak v. Darak, supra, 467 n. 8).
To determine if a new statute affects substantive rights or is purely procedural, a court must obviously examine both the text of the statute and the context in which it is to be applied. A statute is purely procedural, and thus is presumed to be applied to all actions, past and future, if it is "general in [its] terms and affect[s] matters of procedure." Loew's Enterprises, Inc. v.International Alliance of T.S.E., 127 Conn. 415, 418 (1941) (applying the presumption of retrospective application to a new statute affecting equitable remedies, since such remedies, of this very nature, are dependent upon events which occur both before and after actions for injunctive relief are filed); Schurgast v.Schumann, 156 Conn. 471, 487 (1968) (applying the presumption of retrospective application to General Statutes § 57-102a, which for the first time in Connecticut permitted defendants to implead third parties into civil damages actions against them). A new statute affects substantive rights, and thus is presumed not to have been intended to apply retrospectively, where it expands or contracts the scope of civil liability for particular conduct by creating, modifying or doing away with causes of action based upon that conduct, defenses to such causes of action, and/or remedies therefor. See, e.g., Loew's Enterprises, Inc. v. InternationalAlliance of T.S.E., supra, 418, 419 (1941) (explaining that the "basis of the presumed intention that statutes affecting substantive rights shall not apply to pending actions is no doubt the injustice of changing the grounds upon which an action might be maintained after it has been brought.") Accord, Massa v. Nastri,125 Conn. 145, 148 (1939) (stating similarly that the "rule that laws are not to be construed as applying to cases which arise before their passage is applicable when to disregard it would CT Page 9748 impose an unexpected liability that if known might have caused those concerned to avoid it. . . . If the effect of a construction contended for `would be to impose a liability for a past occurrence where none existed at the time, or, what is the same thing, take away a legal defense available at the time, it is to be avoided.'" (Citation omitted.)) By the logic of the above-described authorities, the repeal of a statute which once established a precondition to the assertion of a common-law right has been held not to affect any liability arising before the repealing legislation became law. Id., 150 ("When a right of action exists independent of statute, and a statute is enacted prescribing a condition constituting an additional element, repeal of the statute after right of action accrued will not affect its application.")
In this case there is no question that Public Act 94-240, as applied to General Statutes § 20-325a, affects substantive rights. Here, as in Massa v. Nastri, the effect of the new Act was to repeal an absolute statutory defense to a common-law right of action. Prior to the passage of the Act, no such action could be brought under any circumstances without perfect compliance with subsection (b) of Section 20-325a. McCutcheon Burr, Inc. v.Berman, 218 Conn. 512, 520 (1991) ("it is well established that the requirements of § 20-325a(b) are mandatory rather than permissive and that the statute is to be strictly construed." (Citing with approval, inter alia, Arruda Realty, Inc. v. Doyon, supra, 620)). After the passage of the Act, strict compliance was excused where there was "substantial compliance" with subdivisions (2) to (6) of subsection (b) of the statute and "it would be inequitable to deny" the broker's claim for relief. Here, then, since the rights affected by the new Act are clearly substantive, the question presented for decision is whether, notwithstanding the presumption against retrospective application, the legislature `clearly and unequivocally expresse[d]' the intention that the law should apply retrospectively.
One universally recognized indicator of legislative intent that a new law should apply retrospectively is proof that its purpose was to clarify a pre-existing statute. State v. Magnano,204 Conn. 259, 284 (1987). "In principle, a statutory amendment that construes and clarifies a prior statute operates as the legislature's declaration of the meaning of the original act."Darak v. Darak, 210 Conn. 462, 471 (1989). Whenever an intent to clarify is made manifest, the legislature is understood to have directed the courts to enforce the statute, as clarified, to all cases arising thereunder, both before and after the clarification. CT Page 9749Hartford v. Suffield, 137 Conn. 341, 346 (1950).
"To determine whether an act should be characterized as clarifying legislation, [courts must] look to the legislative history to determine the legislative intent." Darak v. Darak,
supra, 471. This task is made simple when the legislature expressly discloses an intent to clarify in the title of the new act, the statement of purpose which accompanies it, or the remarks of its sponsors and supporters in presenting it to their fellow legislators. Even without such an explicit declaration of an intent, however, an intent can be inferred from other facts and circumstances, including the recency of any novel judicial interpretation of the prior law with which the legislators took issue when debating the new act. See, e.g., Rudewicz v. Gagne,22 Conn. App. 285, 288 (1990). Such indications in the legislative history are to be contrasted, however, with mere expressions of displeasure as to perceived deficiencies in the prior law as written or undesirable consequences to which, so written, it has led. A stated desire to remedy such deficiencies and/or to avoid such consequences demonstrates an intent to change the law, not to clarify it, and thus an intent to have the newly changed law apply prospectively. Darak v. Darak, supra, 471 ("The prospective application of new legislation is premised on the assumption that the legislature has intended to make a change in existing law.")
In Coldwell Banker v. Ward, 15 Conn. L. Rptr. No. 8, 273 (November 27, 1995), one judge of this Court ruled that Public Act 94-240
is to be applied retrospectively because it merely clarified the pre-existing version of General Statutes § 20-325a. In support of this conclusion, the Coldwell Banker Court relied principally upon the testimony of one of the Act's supporters, Mr, Richard Hannifin of the State Department of Consumer Protection, before the Legislature's Joint Committee on Insurance and Real Estate, which reported favorably on the bill. "The legislative history," observed the Court,
 offers some evidence as to why the legislature passed General Statutes § 94-240 [sic]. Larry Hannifin, Director of the Department of Consumer Protection, Real Estate Division, testified at the joint committee hearings concerning P.A. § 94-240 [sic], and commented that "the proposed changes expand section 20-325A(b) so that if a broker in a real estate transaction has substantially complied with CT Page 9750 the provisions of this chapter, or this Section, the broker will be permitted to pursue their claims for payment of the license fees in our court system." Insurance and Real Estate, 1994 Sess., p. 91. Additionally, Hannifin noted that the present state of law under General Statutes § 20-325a(b) required strict compliance with the provisions of the statute, and that if as much as a date is missing from the contract, the agent is prohibited from receiving its commission. Conn. Joint Standing Committee Hearings, Insurance and Real Estate, 1994 Sess., p. 91. Hannifin testified that this interpretation "has resulted in unjust enrichment to various sellers of properties. Conn. Joint Standing Committee Hearings, Insurance and Real Estate, 1994 Sess., p. 91.
Coldwell Banker v. Ward, supra, 274-75. According to the Court, Mr. Hannifin's above-quoted remarks "tend to show that the [legislature's] intent in passing the bill was to clarify an improper interpretation of the statute," id., 275, since the new Act "clearly . . . change[d] . . . the law of McCutcheon Burr,Inc. v. Berman, supra," where three years earlier the Supreme Court had "found that General Statutes § 20-325a is mandatory rather than permissive and that [its] requirements are to be strictly construed." Coldwell Banker v. Ward, supra, 275. "When," the Court concluded, "the legislature changes the wording of a statute in order to change the interpretation that the courts have been giving the statute because of an ambiguity in the statute, the amendment is a clarifying statute that should be given retroactive application." Id. (citing Caron v. Inland Wetlands and WaterCommission, 222 Conn. 269, 279 (1992).
Respectfully, this Court disagrees with the foregoing analogies for several reasons. First, though the committee testimony of a non-legislator can provide evidence of legislative intent, at least when the legislature acts consistently, with his recommendations, the remarks of Mr. Hannifin simply fail to support the conclusion that the legislature passed Public Act 94-240 to clarify General Statutes § 20-325a, not merely to change it. Mr. Hannifin, to be sure, was directly critical of the results of strict enforcement of the original statute, stating that many property sellers were unjustly enriched thereby at the expense of CT Page 9751 brokers whose failure to comply was minor or technical. At no point, however, did he ascribe the strict enforcement standard to a judicial misinterpretation of the statute as written. To the contrary, he noted that the rule of strict compliance was the existing law, and that "the proposed changes expand Section 20-315A(b) so that if a broker in a real estate transaction has substantially complied with the provisions of . . . this section, the broker will be permitted to pursue their claims for payment of the license fees in our court system." Coldwell Banker v. Ward,
supra, 274. (Emphasis added.) An expansion of the law is a change in the law, not merely a clarification of it. A clarification, by definition, leaves the law exactly as it is, with its original meaning intact and its terms unchanged. By stating that the law should be expanded, Mr. Hannifin clearly supported a change in existing law, not a mere clarification of its original terms.
The balance of the legislative history, moreover, is devoid of any evidence to suggest that what the legislature sought to achieve by passing Public Act 94-240 was a clarification of existing law. The Act, accordingly, was entitled "An Act Concerning the Modernization of the Real Estate License Law," and its purpose, as listed in the Act, was "[t]o modernize the real estate license law." To modernize a law is to "make [it] modern," The New Merriam-Webster Dictionary, p. 471, or to bring it "up-to-date,"id., 795 (equating the terms "up-to-date" and "modern"), "extending [it] up to the present time." Id. This description by the legislature of its own purpose flatly contradicts any notion or suggestion that its true purpose in passing the Act was to leave the law unchanged, merely clarifying its original terms and requirements. Not surprisingly, then, the word "clarify" appears nowhere in the legislative debates, and there is similarly no mention or criticism of any judicial decision whose effects would be modified by the passage of the Act.
Finally, an examination of the Act's substantive provisions confirms that no clarification of prior law was thereby intended. In particular, the language of new subsection (c) of Section 20-325a
expressly reflected the logical inconsistency between the exception to strict enforcement it created and the language of the other statutory subsections which had given rise to the strict enforcement rule. Subsection (c), to reiterate, provides as follows:
 (c) NOTHING IN SUBSECTION (a) OF THIS SECTION OR SUBDIVISIONS (2) TO (6), INCLUSIVE, CT Page 9752 OF SUBSECTION (b) OF THIS SECTION SHALL PREVENT ANY LICENSEE FROM RECOVERING ANY COMMISSION, COMPENSATION OR OTHER PAYMENT IN RESPECT TO ANY ACTS DONE OR SERVICES RENDERED, IF SUCH PERSON HAS SUBSTANTIALLY COMPLIED WITH SUBDIVISIONS (2) TO (6), INCLUSIVE, OF SUBSECTION (b) OF THIS SECTION AND IT WOULD BE INEQUITABLE TO DENY SUCH RECOVERY.
This subsection clearly acknowledges that a logical reading of subsections (c) and (b) of the statute requires strict compliance, for otherwise it would not have started with the phrase, "Nothing in subsection (a) of Section 20-325a or subdivision (2 to (6), inclusive, of subsection (b) of Section 20-325a shall prevent. . . ." In addition, since the terms "has substantially complied" and "it would be inequitable to deny such recovery" do not appear in the original version of the statute, their inclusion in subsection (c) define the elements of an exception to the rule of strict compliance rather than an explanation that subsections (a) and (b) of the statute should originally have been read to reflect them. In short, as both Mr. Hannifin and the drafters of the Act clearly envisioned, the Act was designed to afford relief from the rule of strict compliance by changing the statute which, correctly interpreted, had produced the rule, not by clarifying the statute so as to restore to it an original meaning inconsistent with strict compliance.
In conclusion, the Coldwell Banker Court's holding thatPublic Act 94-240 is clarifying legislation, which must be added retrospectively, appears to have been based on the erroneous premise that any legislation whose effect is to overcome a judicial interpretation of existing law must be so interpreted and applied. That, however, is not our law. See, e.g., Darak v. Darak, supra, 468 n. 9 ("The defendant offers no support, and we have found none for her argument that the [presumption against retroactive application of statutes affecting substantive rights] does not apply where the legislation overturns a judicial interpretation of a statute[.]") In this case, there is no evidence to support the plaintiff's claim and the Coldwell Banker Court's conclusion thatPublic Act 94-240 is clarifying legislation.
Absent proof that the statute was intended to clarify existing law, Public Act 94-240 cannot be applied retrospectively unless the text of the statute and its legislative history otherwise clearly and unequivocally so indicate. For the following reasons, the CT Page 9753 Court concludes that no such intent was ever expressed, and thus that the statute cannot be applied retrospectively.
A close examination of Public Act 94-240 reveals that instead of merely amending the pre-existing statute, it repealed that statute in its entirety, reenacting parts of it together with new statutory provisions, including what is now codified as subsection (c) thereof. This state of affairs is significant because it conclusively proves that the new law was to be applied prospectively only.
Section 3 of Public Act 94-240 provided in pertinent part as follows:
 Sec. 3. Section 20-325a of the general statutes, as amended by section 1 of public act 93-355, is repealed and the following is substituted in lieu thereof:
 (a) No person who is not licensed under the provisions of this chapter, and who was not so licensed at the time he performed the acts or rendered the services for which recovery is sought, shall commence or bring any action in any court of this state, after October 1, 1971, to recover any commission, compensation or other payment in respect of any act done or service rendered by him, the doing or rendering of which is prohibited under the provisions of this chapter except by persons duly licensed under this chapter.
 (b) No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after [October 1, 1971] THE EFFECTIVE DATE OF THIS ACT, as set forth in subsection (a), unless [such] THE acts or services were rendered pursuant to a contract or authorization from requirements of this subsection any [such] contract or authorization shall: (a) [be] BE in writing, (2) contain the names and addresses of [all the parties thereto] THE REAL ESTATE BROKER PERFORMING THE SERVICES AND THE NAME OF THE CT Page 9754 PERSON OR PERSONS FOR WHOM THE ACTS WERE DONE OR SERVICES RENDERED, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization, (5)[be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5, and] BE SIGNED by the real estate broker or [his] THE REAL ESTATE BROKER'S authorized agent, [and (6) disclose the lien rights applicable under subsection (c) of this section] (6) disclose the lien rights applicable under subsection (c) of this section] (6) IF SUCH CONTRACT OR AUTHORIZATION PERTAINS TO "COMMERCIAL REAL PROPERTY" AS DEFINED IN SUBSECTION (d) OF THIS SECTION, INCLUDE THE FOLLOWING STATEMENT: "THE REAL ESTATE BROKER MAY BE ENTITLED TO CERTAIN LIEN RIGHTS PURSUANT TO SUBSECTION (d) OF SECTION 20-325A OF THE CONNECTICUT GENERAL STATUTES", AND (7) IF THE ACTS DONE OR SERVICES RENDERED INVOLVES A LISTING CONTRACT FOR THE SALE OF REAL ESTATE, BE SIGNED BY THE OWNER OF THE PROPERTY OR AN AGENT AUTHORIZED TO ACT ON BEHALF OF SUCH OWNER, PURSUANT TO A WRITTEN DOCUMENT EXECUTED IN THE MANNER PROVIDED FOR CONVEYANCES IN SECTION 47-5, AND IF THE ACTS DONE OR SERVICES RENDERED INVOLVES A BUYER AGENCY CONTRACT, BE SIGNED BY THE BUYER OR AN AGENT AUTHORIZED TO ACT ON BEHALF OF THAT PERSON.
 (c) NOTHING IN SUBSECTION (a) OF THIS SECTION OR SUBDIVISIONS (2) TO (6), INCLUSIVE, OF SUBSECTION (b) OF THIS SECTION SHALL PREVENT ANY LICENSEE FROM RECOVERING ANY COMMISSION, COMPENSATION OR OTHER PAYMENT IN RESPECT TO ANY ACTS DONE OR SERVICES RENDERED, IF SUCH PERSON HAS SUBSTANTIALLY COMPLIED WITH SUBDIVISIONS (2) TO (6), INCLUSIVE, OF SUBSECTION (b) OF THIS SECTION AND IT WOULD BE INEQUITABLE TO DENY SUCH RECOVERY.
CT Page 9755
Id. A simple reading of the foregoing provisions makes several things unmistakably clear.
The first, of course, is that as of the effective date ofPublic Act 94-240, the pre-existing version of General Statutes § 20-325a was repealed for all purposes, with the new version of the statute being substituted therefor. The new Act thus did not modify the old statute at all, but replaced it in its entirety. Therefore, provisions in the new statute which relieved real estate brokers of the need to comply literally with each provisions of "this section" applied only to real estate transactions governed by "this section," not to transactions performed when some other statute — viz. the pre-existing version of Section 20-325a — was in effect.
Subsection (c) of the new statute, which has been the focus of this Court's analysis, thus provides that, "Nothing in subsection (a) of this section or subdivision (2) to (6), inclusive, of subsection (b) of this section shall prevent any licensee from recovering any commission, compensation or other payment in respect to any acts done or services rendered, if such person has substantially complied with subdivisions (2) to (6), inclusive, of subsection (b) of this section and it would be inequitable to deny such recovery." Id. (Emphasis added.) So written, this subsection of the new statute partially removes the bar of unenforceability which is erected by subsections (a) and (b) "of this section" — viz. of the new statute — where there has been substantial compliance with "subdivision (2) to (6), inclusive, ofthis section and it would be inequitable to deny such recovery.Id. (Emphasis added.) Plainly, subsection (c) of the new statute does not afford relief from full compliance with any other statute than that to which it specifically refers. Critically, it cannot be read to modify, and thus to afford relief from full compliance with, the pre-existing version of Section 20-325a, since that statute is not the "this section" to which the new subsection (c) exclusively applies.
This reading of Public Act 94-240 is confirmed by the text of the new subsection (b) of General Statutes § 20-325a. New subsection (b) added two new substantive requirements to those set forth in the pre-existing version of the statute, and provided that those requirements, together with all pre-existing requirements which were transplanted from old subsection (b) thereto, would apply to "any action in respect of any acts done or services rendered after July 1, 1994," the effective date of the Act. From CT Page 9756 this usage, it is apparent that the new subsection (b) of Section 20-325a, as to which relief from full compliance is afforded by new subsection (c) of that statute, does not apply to any action in respect to acts done or services rendered before the effective date of the new statute. Subsection (c) thus does not afford relief from the strict statutory requirements of the earlier version of General Statutes § 20-325a, which Public Act 94-240 replaced.
For the foregoing reasons, the Court hereby concludes that there is no genuine issue of material fact that the listing agreement here in question violates General Statutes § 20-325a, as it was written prior to the passage of P.A. 94-240. Accordingly, the Court hereby grants the defendants' motion for summary judgment.[1]
SHELDON, J.