[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE DEFENDANT'S MOTION FOR MODIFICATION (171)
Defendant husband in this post judgment motion seeks to reduce his obligation to pay for the higher education of an adult child of the parties and to terminate completely his duty to provide alimony to his former spouse.
The plaintiff commenced the action for dissolution in August of 1981. The court dissolved the marriage in August of 1983. The parties married in 1961 and lived together for approximately twenty years; four children were born of the union. At the time of the dissolution two children, Greta born 5/1/68 and Kevin, born 11/3/71 were minors.
The parties executed an agreement on August 18, 1983 acknowledging the minority of these children. This agreement provided for unallocated alimony for the support and maintenance of the plaintiff and that of his minor children so long as she lives and shall not remarry. This agreement was incorporated into a judgment of August 18, 1983. Paragraph 7 of the judgment states:
 It shall be a substantial change of circumstances when the last child has completed his preparatory school education.
 (b) In any event that any minor child shall die or reach the age of eighteen years the obligation of the husband . . . CT Page 318 will be reduced by $75.00 per week for each child.
Paragraph 8 of the judgment states:
 Husband agrees to make available to all his male children the opportunity to work in his business during periods of summer vacations. The purpose of this provision is to allow each of them to earn a sum of money which will allow them to pay for the cost of their preparatory school and college education.
 In the event husband is unable or unwilling to provide such work or any child is unable to earn an amount sufficient for higher education as defined below, husband agrees to make available funds to each child for the sole purpose of attaining a higher education.
 For the purpose of this agreement, the amount sufficient for higher education on an annual basis, shall be that sum or sums of money, which will aggregate the cost for a student to attend the University of Connecticut, as an in state student, including tuition, room and board, fees, books, transportation and miscellaneous costs. The husband is ordered to pay the amount sufficient for higher education for four (4) years of undergraduate education for his daughter, Greta M. Zettergren.
At the time of the hearing on defendant's motion for modification of judgment, both of the minor children referred to in the judgment had reached the age of majority and both had completed their private school preparatory education. Greta M. Zettergren had also completed her college education. The youngest child, Kevin, has been accepted as an undergraduate student at the University of Connecticut and will commence his freshman year in the fall of 1990. Pursuant to paragraph (7) of the judgment the unallocated periodic alimony and support has been reduced from $612.00 per week to $462.00 by virtue of the minors reaching adulthood.
The parties also seem to be in agreement that at one time or another (the file is not crystal clear on this point) the unallocated alimony and support was further reduced by CT Page 319 $62.00 to reflect the fact that Greta finished private preparatory school in June of 1986. The parties are also in agreement that since Kevin has finished his preparatory private school education the unallocated periodic alimony and support is subject to a June 1990 reduction of $50.00. These reductions reflecting the minors majority status and the completion of the preparatory education of Greta and Kevin have effectively reduced the defendants present obligation for periodic alimony to $350.00 weekly for the support and maintenance of the plaintiff as long as she lives and shall not remarry.
With regard to the question of support, the defendant remains liable for the costs of Kevin's college education in accordance with paragraph eight (8) of the judgment
Paragraph seven (7) of the judgment imposed reimbursement obligations upon the defendant for expenses incurred in connection with any illness of or accident to a minor child. Since Kevin is no longer a minor child, this aspect of paragraph seven (7) is fulfilled and terminated. Another portion of paragraph seven (7) requires the defendant to provide medical insurance for all dependent children of either the plaintiff or defendant for so long as they shall remain dependents.
This file has received the attention of the court on many occasions. Plaintiff has filed innumerable Motions for Contempt in order to obtain the periodic alimony required by the judgment and the agreement of the parties.
The plaintiff and the defendant are of the same age group, early fifties, and each testified to good health. Their financial affidavits indicate that both have substantial earning capacities. Defendant's 1040 return for 1987 shows a total income of $72,934.00 with a deduction for alimony paid plaintiff of $27,738.00. Defendant's 1988 1040 return indicates total income of $61,810.00 with a deduction for alimony paid to plaintiff of $24,660.00. Plaintiff's 1040 return for 1989 shows a total income of $67,055.00 which includes alimony received of $20,446.00.
Plaintiff presently owns and resides in the former family home which is mortgage free with three adult children, two of whom are college graduates. The third child, Kevin, will attend college in the fall. The expense of his education will be bourne by the defendant father pursuant to the judgment which also grants his dependency exemption to the plaintiff mother. Currently plaintiff has a net estate in excess of $200,000.00 and an earning capacity in excess of $45,000.00. Absent unforeseen exigencies such as health problems or disabling accidents, plaintiff should accumulate a fairly substantial CT Page 320 estate during her remaining economic life.
Defendant maintains and operates Sherwood Roofing, a wholly owned business from which he currently draws $1,250.00 weekly gross or $65,000.00 annually before taxes. He owns and lives in a single family dwelling valued at $200,000.00 which is subject to a $190,000.00 mortgage. He is the owner of a house built for speculation which he values at $375,000.00 and which is subject to mortgages of $444,000.00. Defendants current affidavit shows that he has a negative equity (-$6,500.00). The courts comparison of assets and liabilities suggests that the actual negative net worth is somewhat higher, assets $637,500.00 — liabilities $668,300.00.
The court has reviewed two prior motions for modifications submitted by defendant. The first dated July 1, 1987, was decided simultaneously with two motions submitted by plaintiff, one a motion for contempt, the other a motion for modification asking for an increase in child support for Kevin. The court orders dated July 27, 1987, noted the contempt motion was withdrawn. A footnote clarified the original judgment as requiring $350.00 alimony; $150.00 child support and $112.00 for tuition payments for preparatory school education for the 2 minors. The order did not modify the child support for Kevin, did not grant any specific relief to the defendant but recommended that the defendant continue a payment for the benefit of Greta until December 31, 1988, despite the fact that Greta finished preparatory school in June of 1986. The defendant accepted this recommendation and made the payments. Defendants financial affidavit submitted with this motion showed a gross income of $941.00 weekly and $256,078.00 in assets and $93,958.00 in liabilities.
In July of 1989, the defendant submitted another motion for modification. On this occasion plaintiff's affidavit indicated gross weekly income of $1,118.00 and total weekly expenses of $3,595.00. Defendants assets totaled $779,605.00 against liabilities of $576,000.00.
Plaintiffs 1989 affidavit listed her total weekly expenses of $1,071.60 and net assets at $116,220.00. Defendants motion for modification was denied by the court, Allen, J. on September 15, 1989.
There are significant differences reflected in the financial affidavits with regard to earning capacities, net worth of the parties in May of 1990 as compared with September of 1989. Some of these differences are apparent from a comparison of the affidavits, other differences were illuminated by cross examination and/or by admissions of the parties. The CT Page 321 defendant admitted on cross examination that two properties listed in his September of 1989 affidavit were liquidated for approximately $120,000.00 between November of 1989 and January of 1990. The proceeds are not noted in his May affidavit. If they were available they would move his net worth into the positive range. Defendant contends the proceeds were used to pay his weekly expenses which far exceed his weekly income.
The plaintiff's May, 1990 financial affidavit failed to include in her total income approximately $60.00 dollars in weekly earnings derived from part-time earnings, dividends and interest. The affidavit also contained information on her withholding which was incorrect and omitted a savings account of $11,000.00. In all probability, the best estimate of the plaintiff's earning capacity is her 1989 Income Tax Return which indicates gross income in excess of $46,000.00 exclusive of alimony. This amounts to approximately $884.00 weekly. The weekly expenses included in plaintiff's May, 1990 affidavit amounted to $1,079.00. These expenses appeared to be inflated by expenditure for individuals other than herself, i.e. self supporting adult children. In same instances the expenses represent weekly expenses not incurred or reasonably to be anticipated. The court concludes that the plaintiff's weekly expenses if reasonably accumulated do not exceed her earning capacity exclusive of periodic alimony.
Defendants current weekly expenses are listed at $2,913.00 against gross income of $1,250.00. Focusing only on his payments to banks it appears that they total $1,781.00. These obligations are exclusive of his personal maintenance expenses and his judicially mandated expense for alimony and support. One of the defendant's financial elements which has changed significantly since September, 1989 is the property at 55 East Shore Drive, Niantic. In September he evaluated it at $495,000.00 against encumbrances of $444,000.00. His current affidavit lists the property at $375,000.00 with the encumbrances still at $444,000.00.
The purpose of periodic alimony is to meet a spouse's continuing duty to support. Wood v. Wood, 165 Conn. 777, 784
which spouses assume toward each other by virtue of the marriage. General Statutes sec. 46b-82 directs the court to consider various elements before determining whether alimony should be awarded both as to duration and amount. One of the elements listed in the statute is . . . estate and needs of each of the parties. Continuing orders, such as those for periodic alimony are subject to modification upon a showing of a substantial change in the circumstances of either party . . . whether or not such change of circumstances was contemplated at the time of dissolution. Prior to 1987, the statutory language was CT Page 322 interpreted to require a substantial change in the circumstances of a party that was not within the contemplation of the parties at the time of the original decree. McGuinness v. McGuinness,185 Conn. 7, 9-10 (1981). Since the 1987 modification has been interpreted to be prospective only Darak v. Darak, 210 Conn. 462,468-473, a finding is required that the change in circumstance was uncontemplated at the time of the dissolution in August of 1981. The burden of proof on the change of circumstances and the fact that it was uncontemplated and substantial is on the moving party, in this case the defendant. Darak v. Darak, supra, p. 470. Grinold v. Grinold, 172 Conn. 192,195.
"Where, however, there has been any modification granted since the entry of the original decree, a subsequent modification, such as the one before us, would depend upon changed circumstances arising not since the original decree but since the earlier modification." Benson v. Bernson [Benson], 187 Conn. 380
383N (1982). The court has analyzed the financial affidavits which accompanied the motions for modifications filed by defendant the first on July 1, 1987, the second filed in July of 1989. The first application afforded defendant some relief from payment of preparatory school expense for a child who had graduated from preparatory school and was then attending college. The order was not supported by a written decision, however, it seems to have been based on an agreement of the parties that certain portions of the original judgment provides for automatic deductions on the happening of certain events; to wit: graduation of a minor child from preparatory school.
The second application was denied and hence was not a modification.
A review of the financial affidavits submitted to the court at the time of the 1983 dissolution with the financial affidavits submitted with the May 1990 motion enables the court to find that there has been a substantial change in the financial circumstances of both the plaintiff and the defendant, a change not contemplated at the time of the dissolution. The earnings of the plaintiff in 1983 were based on unemployment compensation of $87.00 weekly and $350.00 child support.
Earnings have increased to in excess of $46,000.00 annually in 1990. In 1983 plaintiff's weekly expense was listed at $964.97. In May of 1990 listed total expenses of $1,079.00. After giving consideration to all the evidence offered the court finds that plaintiff's actual present expenses should not exceed her earning capacity exclusive of period alimony. The net worth of the plaintiff has increased from $58,989.00 in August of 1983 to $102,000.00 in July of 1987, $116,220.00 in CT Page 323 July of 1989 to $200,000.00 in May of 1990. The net worth of the defendant has steady declined from $273,069.00 in 1983 to $162,120 in July of 1987, $171,147.00 in September of 1989 to minus $57,800.00 in May of 1990. This diminution in net worth has been accompanied by an increase in the weekly expenses of defendant from $1,335.00 in 1983, $1,081.00 in July of 1987, $3,595.00 in September of 1989, and $2,913.00 in May of 1990.
The judgment, paragraph seven (7) indicates that "it shall be a substantial change of circumstances when the last child has completed his preparatory school education. This event has caused a reduction in the unallocated periodic alimony and support to plaintiff in the amount of $112.00 weekly to its current level of $350.00. Defendant urges that this provision in the judgment satisfies his burden with regard to proving a substantial change in circumstances. The court eschews this opportunity and finds the defendant has satisfied. his burden by offering substantial evidence of substantial uncontemplated changes in the earning capacity, current liabilities and net worth of each party justifying a modification in his periodic alimony obligation to plaintiff. The findings of the financial status of the parties is based on an analysis of the May 1990 affidavits and evidence compared with the affidavits submitted in August of 1983 and July of 1987.
Accordingly, the court orders a reduction in the order from $350.00 per week to $175.00 per week. The court denies defendant's motion to eliminate or substantially reduce the obligation of defendant to pay for the higher education of the minor child Kevin Zettergren. The court also denies defendant's motion that he be granted the exemptions for Federal Income Tax purposes associated with the children of the parties.
DONALD T. DORSEY JUDGE, SUPERIOR COURT