[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE PLALNTIFF'S AMENDED MOTION FOR MODIFICATION OF ALIMONY POSTJUDGMENT (232) and DEFENDANT'S POSTJUDGMENT MOTION TO TERMINATE ALIMONY (239)
The parties' marriage was dissolved by judgment entered in this court on September 24, 1979 at which time their written agreement (110) was incorporated in the judgment. Article III thereof provided for periodic alimony payable to the plaintiff until her remarriage or the death of either party. The text of the article is attached hereto as Appendix A.
By motion filed May 10, 1989 the plaintiff sought an increase in the alimony order which was denied on March 20, 1990. The plaintiff appealed and on July 9, 1991 the Appellate Court affirmed the trial court, Simmsv. Simms, 25 Conn. App. 231. The decision contains a succinct summary of the alimony terms and the applicable law governing modification postjudgment. The defendant also sought modification of the alimony order by motion filed December 11, 1989 (211) which was denied on March 20, 1990. No appeal was taken.
On August 18, 1998 the plaintiff caused to be served on the defendant by a deputy sheriff "Motion for Modification of Alimony" (225), a notice of deposition and a request for disclosure. On October 8, 1998 the defendant filed a "Postjudgment Motion to Dismiss Plaintiff's Motion for Modification of Alimony" (229). On October 29, 1998 the plaintiff filed a "Request for Leave to Amend Motion for Modification of Alimony Postjudgment" (230) with the proposed amended motion submitted therewith (231). On November 2, 1998 the court granted both the motion to dismiss and the motion to amend. On November 13, 1998 the plaintiff filed the amended motion (232) pursuant to leave granted by the court. The defendant claims that such motion needed to be served to preserve retroactivity. This court finds that the amended motion relates back to the time the original motion was served as provided by 46b-86 (a) C.G.S. On August 26, 2002 this court ordered the 1998 amended motion continued to 10/26/02 with all discovery "within 6 weeks" thereby taking it out of the proscription of Sec. 25-34 (c) Ct.Prac.Bk. Filing the same motion CT Page 2735 again on July 15, 2002 (236) and duplicated again July 22, 2002 (237) is found by this court to be redundant.
The defendant's brief states:
It is well settled law that the court is limited to consideration of evidence since the last date of modification to the present date when determining a motion for modification. Borkowski v. Borkowski,228 Conn. 729, 638 A.2d 1060 (1994).
That case states, at page 738:
Therefore, although the trial court may consider the same criteria used to determine the original award "without limitation"; Hardisty v.Hardisty, supra, 183 Conn. 259; in doing so, its inquiry is necessarily confined to a comparison between the current conditions and the last court order.
In Pearl v. Pearl, 43 Conn. App. 541 (1996), the judgment of dissolution was rendered on June 27, 1984. The defendant filed a motion to modify the plaintiff's alimony in December 1992 which was denied on March 23, 1993. The defendant filed another motion for modification or termination of alimony dated October 20, 1994. At the hearing held June 6, 1995 the court allowed evidence of circumstances occurring only after March 23, 1993 in denying the motion.
The Appellate Court reversed, stating, at page 544:
We conclude that the trial court should have allowed the defendant to present evidence from the date of the dissolution in 1984, when the only order of alimony was made.
The court found that to hold otherwise would punish a party who sought modification in good faith prematurely, Id. 543. The defendant's reliance on the Fairfield JD Superior Court decision Latka v. Latka, Lexis 1942;20 Conn.L.Rptr. 117, is misplaced.
The 1987 Public Acts, No. 87-104 rewrote Gen. Stat. 46b-86 (a) by providing that any final order for the periodic payment of permanent alimony may be thereafter modified upon a showing of a substantial change in the circumstances of either party whether or not such change was contemplated at the time of dissolution. However, in Darak v. Darak,210 Conn. 462 (1989), the Supreme Court held that the act applies prospectively only to dissolution decrees entered after October 1, 1987. Therefore, in this case the moving party bears the burden of CT Page 2736 demonstrating that the parties did not contemplate the changed financial circumstances.
This case was before the Appellate Court in 1991 on plaintiff's motion for modification of alimony which was denied, Simms v. Simms,25 Conn. App. 231, which held that the defendant's capital account was an asset. After he received treasury bonds distributed from his capital account he redeemed them. The plaintiff claimed that it constituted income. The court held that it was an exchange of assets and could not support a modification of alimony. The court then summarized the applicable law as follows:
Under General Statutes sec. 46b-86 (a) as it existed at the time of the dissolution of the parties' marriage, the plaintiff, to obtain a court ordered modification of alimony, must show a substantial change in circumstances that "must not have been contemplated by the parties" at the time the decree was entered. Grinold v. Grinold, 172 Conn. 192, 195,374 A.2d 172 (1976); see also Darak v. Darak, 210 Conn. 462, 463,556 A.2d 145 (1989). Although a dramatic increase in the income of one of the parties may constitute a substantial change in circumstances, an increase in the value of assets ordinarily will not. See Hardisty v.Hardisty, 183 Conn. 253, 256-57, A.2d 307 (1981). Only in cases of fraud can a modification be based on an increase in the value of assets. See, e.g., Theonnes v. Theonnes, 181 Conn. 1111, 114, 434 A.2d 343 (1980);Casanova v. Casanova, 166 Conn. 304, 305, 348 A.2d 668 (1974).
Id. 234.
On his financial affidavit dated September 18, 1979 the defendant listed his income:
Monthly draw as partner at Bear, Stearns Company in New York City $4,450.00
His current financial affidavit states that he is self-employed but also states that his employer is Simms Capital Management, Inc. with an annual salary of $265,000 and $255,893 after deducting Social Security tax and Medicare tax. His payroll statement dated November 29, 2002 (Defendant's Exhibit C) issued by Simms Capital Management, Inc. shows year to date totals as follows:
Total earnings $245,000.00
Less: Soc. Sec. $5263.80 CT Page 2737
Medicare 3552.52
Federal 62068.36
Ct 10433.75
401k 10083.37
After adding back the 401k amount the net to date is $163,681.57 for eleven months or $14,880.14 monthly. The court finds that this dramatic increase in salary is an unanticipated substantial change in the defendant's financial circumstances. For 2001 the defendant reported W-2 income of $379,500 (Plaintiff's Exhibit #1) and for 2000 W-2 income reported was $430,376 (Plaintiff's Exhibit #2). For 1999 he reported, as an individual, net profit from his consulting business of $377,620 (Plaintiff's Exhibit #3) and for 1998 he reported net earnings from self-employment of $372,632. The court concludes that the defendant's present earnings constitute a substantial change in circumstances for the increase is dramatic, when compared to 1979, to the extent that neither party anticipated it would occur. In his testimony the defendant admitted same. Such a finding justifies a "reconsideration of a prior alimony order," McCann v. McCann, 191 Conn. 447 (1983) at 451.
In addition to the earnings just outlined, the defendant reported net profit from his consulting business conducted as a sole proprietor in 2001 of $2,029,124 on Schedule C-EZ, Form 1040, taxable interest of $41,549, income from partnership and S corporation sources of $981,963. Capital gains and losses are not included because of Gay v. Gay, 70 Conn. App. 772
(2002), cert. granted, 261 Conn. 930 (2002). The defendant's testimony that his investments suffered losses in 2003 are no more relevant than the gains he made in recent years and this court is not relying on capital gains or losses in reaching its decision.
The plaintiff was not employed at the time of judgment. Her current financial affidavit filed December 5, 2002 lists principal employment at Greenwich Hospital as art therapist earning $428.50 gross weekly and $350.81 net after taxes. For other income weekly she lists alimony of $1,046.29, dividend of $75.19 and social security of $159. She deducts federal tax of $282.98 and state tax of $68.76 with net of $928.74. Total net weekly is listed as $1,279.55. She is now covered by Medicare Encompass. Her affidavit lists Sloan Kettering but shows no balance due. She does list weekly expenses totaling $1,745.41 including reserves for roof of $237.50 and reserve for painting of $115.38 which, if deleted, result in a weekly budget of $1,392.91. The court accepts her testimony that the repairs are needed. The plaintiff has also listed liabilities of CT Page 2738 $41,306.86 including the debt to her current lawyers of $6,627. Periodic alimony provides continuing support, Smith v. Smith, 249 Conn. 265, 275
(1999) and a substantial change in circumstances demonstrates that continued operation of the original order would be unfair or improper,Noce v. Noce, 181 Conn. 145, 149 (1980).
Both parties have health problems but neither has been prevented from working at least part time (cf. McGuinness v. McGuinness, 185 Conn. 7, 10
(1981)). The plaintiff has not proven heavy medical expenses that she is unable to meet, Id., 11. However, the plaintiff has not been able to meet all of her expenses and has incurred substantial debts. The defendant is obliged to pay alimony out of income and is not obliged to liquidate assets to meet the periodic order. Schorsch v. Schorsch, 53 Conn. App. 378
(1999). Neither should the plaintiff be obliged to liquidate assets to meet her periodic expenses (cf. Zahringer v. Zahringer, Conn. (2003)).
The court is obliged to consider the same criteria used to determine the original award as set forth in Sec. 46b-82. Some of the factors have not changed such as the length of the marriage, the causes of the breakdown, and relative ages. Some factors have changed such as their ages and the condition of their respective health. The plaintiff's continuing need for alimony and the defendant's ability to pay are summarized supra.
The plaintiff's motion is granted. The defendant is ordered to pay $1,500 weekly to the plaintiff as periodic alimony until the death of either party, the plaintiff's remarriage or cohabitation or future court order. The plaintiff requests the order be retroactive to the date of service of the original motion i.e. August 18, 1998 pursuant to Sec. 46b-86
(a). The defendant objects to any retroactivity. The purpose of a retroactive order is to afford the plaintiff the benefit of the modification from the time when it was originally sought, Bartlett v.Bartlett, 220 Conn. 372, 384 (1991). The modified order is therefore made effective as of August 18, 1998. This order creates an arrears which the defendant shall pay at least $500 weekly until current. The defendant is to be credited for all payments made to plaintiff since said effective date in arriving at the arrears amount.
The defendant's motion to terminate alimony is denied.
 SO ORDERED.
HARRIGAN, J.T.R.
Appendix A CT Page 2739
 ARTICLE III ALIMONY AND SUPPORT
3.1 During the lifetime of the Husband and until the death or remarriage of the Wife, subject to the terms of this entire Agreement, the Husband shall pay to the Wife as periodic unallocated alimony and child support the following sums commencing August 1, 1979, in monthly installments, in advance, during the following time periods:
A. August 1, 1979, to and including the payment due to the Wife on July 1, 1982, $3,166.67 per month.
B. August 1, 1982, to and including the payment due to the Wife on July 1, 1984, $2,333.33 per month.
C. August 1, 1984, until the death or remarriage of the Wife, $1,875 per month.
3.2 In addition to the periodic alimony referred to in 3.1, the Husband shall pay to the Wife beginning August 1, 1982, as additional periodic alimony the lesser of the following two alternatives:
A. 33-1/3% of the Husband's net income as herein-after defined in excess of $52,000 per year; or
B. 5% of the alimony payment to which the Wife shall have been entitled for the previous calendar year, annualized.
The parties further agree that from August 1, 1979, until August 1, 1982, the unallocated alimony and child support shall be nonmodifiable by wife.
For purposes of this subparagraph "net income" shall be defined to mean the gross income of the Husband from all sources, excluding capital gains, capital losses or s corporation losses, including that income to which he shall be entitled as a partner, sole proprietor or employee, less the federal, state and local income taxes for which the Husband is obligated on the same, less the amount contributed to the capital account of the Husband and which he shall not be entitled to physically receive. For purposes of this provision, the Husband shall contemporaneously with the filing of his federal income tax returns in the future send to the Wife a copy of said income tax return and a payment of the sum to which the Wife shall be entitled to under 3.2 of this Article. In the event CT Page 2740 subsequent to April 1 commencing in 1983, including but not limited to the prorated five month portion of 1982 commencing on August 1, 1982, the Husband shall ascertain that the Wife's entitlements under 3.2 shall be a 5% increase of her previous year's alimony, he shall make said payment immediately. In the event the Husband in good faith shall ascertain that the Wife shall be entitled to less than said 5% increase, he shall make said payment on account subject to confirmation upon the filing of his federal income tax return. Said payment on account with respect to this subparagraph shall be made no later than April 15 of the year in question, commencing in 1983. Upon the receipt of the income tax return in question, the Wife, the attorney for the Wife, or a certified public accountant designated by the Wife or said attorney shall have the right to examine the federal income tax return of the Husband filed with the U.S. Government for the year in question. The Husband warrants and agrees that said federal income tax return and the work papers used in preparing it will be made available to the Wife, her attorney or a certified public accountant selected by the Wife or said attorney within ten days after being requested to do so by the Wife or her representative. Additionally, the Wife, her attorney or a certified public accountant designated by the Wife or her attorney shall have the right to inspect necessary records at the Husband's employer or partnership to confirm his "net income" as defined above. In the event the Wife shall remarry, the Husband and the Wife agree that there shall be a pro rata adjustment pursuant to the terms of the escalation provisions of this Article for those months of the calendar year that the Wife shall not have been remarried.
3.3 In the event the Wife shall remarry, the Husband shall pay to the Wife as child support the sum of $625 per month commencing immediately with said remarriage until the youngest child of the parties shall attain the age of 18 years. CT Page 2741